Anson GRAVES, et al.,
Plaintiffs-Appellees,

v.

WALTON COUNTY BOARD OF EDU-
CATION, et al., Defendants-Appel-
lants, Cross-Appellants,

v.

Veda J. BAKER, et al., Intervenors-Ap-
pellants, Cross-Appellees.

No. 80–7663
Non-Argument Calendar.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Sept. 27, 1982.

Nation, Maddox & Starnes, Sidney L. Na-
tion, Convers, Ga., for intervenors-appel-
lants, cross-appellees.

Thomas S. Bentley, Atlanta, Ga., for So-
cial Circle Bd. of Educ.

Napoleon B. Williams, New York City,
for Graves, et al.

W. Warren Plowden, Jr., Macon, Ga., Wil-
liam L. Preston, Monroe, Ga., for Walton
Cty. Bd. of Educ.

Before HILL, FAY and ANDERSON,
Circuit Judges.

* Former Fifth Circuit case, Section 9(1) of Public     Law 96–452—October 14, 1980.

FAY, Circuit Judge.

The appellants-intervenors, a group of predominantly white parents from Walton County, Georgia, originally appealed the district court's decree of August 26, 1980. The decree ordered the enforcement of the district court's 1968 order as subsequently modified, requiring the desegregation of public schools in Walton County, Georgia and in the City of Social Circle, Georgia. On March 31, 1981 this court, in an unpublished opinion, remanded the case to the district court so that it could enter appropriate findings of fact and conclusions of law relative to the various motions pending in the case. On July 27, 1981, in response to our remand order, the district court entered its "Order Disposing of All Pending Motions". The district court permitted the substitution of additional plaintiffs for the original named plaintiffs whose claims had become moot. The district court also vacated its previous decisions allowing the Walton County parents to intervene. The proposed intervenors filed their notice of appeal on July 31, 1981. On November 6, 1981, the district court denied the appellant Walton County Board of Education's motion to modify its original desegregation decree. The appellant county board filed its notice of appeal on November 30, 1981. For purposes of efficiency we have consolidated these two appeals. After reviewing the record, we hereby affirm that portion of the district court's July 27, 1981 order adding additional party plaintiffs. Although no formal order of certification was entered by the district court, this case was in fact a class action, and members of the class may be substituted as named plaintiffs in order to preserve the action after the claims of the original named plaintiffs have become moot. However, we reverse that portion of the order in which the district court vacated its previous orders allowing the county parents to intervene. This court further affirms the district court's March 16, 1981 order refusing to amend its original 1968 desegregation order and return county children residing in zone five to Walton County schools.

## FACTUAL AND PROCEDURAL BACKGROUND

Suit was filed originally in 1968 as a class action on behalf of all black school children in Walton County, Georgia, to force the desegregation of public schools in the Walton County school system and the Social Circle school system. The district judge hearing the case at that time treated the case as a class action, although there is nothing in the record that would indicate the case was ever certified as such. On July 30, 1968, the district court entered a judgment desegregating the two school systems. The provisions of the judgment relevant to this appeal pertain to an order of the court establishing attendance zone five in Walton County. County children residing in zone five were to attend school in the adjacent, independent school district in the city of Social Circle.

On August 8, 1971, appellant Walton County Board of Education moved the district court to amend its 1968 decree and to return county students residing in zone five to Walton County schools. The district court denied this request. Apparently, the attendance zone system operated effectively for many years, until the last few years when it was alleged that approximately one-hundred county children residing in zone five were attending Walton County schools. In November 1979, the appellee Social Circle Board of Education moved the district court for an order enforcing the court's original 1968 decree. At that point, a group of predominantly white parents, known as the Concerned Citizens of Walton County, moved the district court for permission to intervene in the case. That motion was granted. The appellants-intervenors immediately filed a motion to vacate the 1968 decree and dismiss the action for mootness, asserting that the graduation, or departure, from school of the original named plaintiffs and the failure of the district court to certify the case as a class action mooted the action. In order to quell the mootness claim, a motion was filed to add two black children enrolled at Social Circle High School as plaintiffs in the case.

On August 26, 1980, the district court entered an order amending its original 1968 decree by establishing new guidelines for the transfer of students; but, the order retained the provision requiring county children living in zone five to attend school in Social Circle. The intervenors-appellants appealed.

This court on March 13, 1981, in an unpublished opinion, remanded the case to the district court. We found the record inadequate for appellate review inasmuch as the district court had before it several motions, based upon many of the same issues raised on appeal, upon which it had not ruled. On July 27, 1981, the district court entered its "Order Disposing of All Pending Motions" adding additional plaintiffs and vacating its previous decision allowing the Walton County Parents to intervene. The county parents appealed.

Pursuant to Fed.Rule Civ.Proc. 59, appellant Walton County Board of Education moved the district court for an express determination of its request to modify the original 1968 decree and to return zone five county students to Walton County schools. On March 16, 1981, the district court denied the appellant county board's motion for relief. The appellant county board appealed.

## ISSUES ON APPEAL

The appellants-intervenors contend 1) that the lack of class certification of the action and the change in status of the original plaintiffs since the commencement of the suit rendered the action moot, thus depriving the district court of power to add additional plaintiffs under Fed.R.Civ.P. 21; and 2) that the district court in its order of July 27, 1981, improperly vacated its previous orders permitting Walton County parents to intervene in the case. Appellant Walton County Board of Education asserts on appeal that the district court erred in refusing to amend its original desegregation decree, since changed circumstances justified the elimination of mandatory attendance zones.

1. Fed.R.Civ.P. 21 as here applicable provides "[p]arties may be dropped or added by order of the court on motion of any party or of its own

## RESOLUTION

I. Plaintiffs Motion To Add Rule 21 Party Plaintiffs.

The appellants-intervenors seek to set aside the July 27, 1981 order of the district court granting the appellee school board's motion to add plaintiffs under Fed.R.Civ.P. 21.[1] The appellants-intervenors assert that the lack of class certification of the action and the graduation, or departure, of the original plaintiffs from the Social Circle school system rendered the action moot, thus depriving the district court of power to grant the subsequent motion to add the proposed party plaintiffs.

■ The parties agree that the original plaintiffs in this action no longer have a live stake in its continued litigation; their claims are moot. Article III of the Constitution imposes a threshold requirement that those who seek to invoke the power of federal courts must allege an actual case or controversy. As noted by the Supreme Court in its *per curiam* opinion in *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–1706, 40 L.Ed.2d 164 (1974) (citations omitted):

The starting point for analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them' . . . The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy. . . .'

The Article III "case or controversy" jurisdictional requirement is further explicated by the Court in *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975) (footnotes omitted):

There must not only be a named plaintiff who has such a case or controversy at the

initiative at any stage of the action and on such terms as are just. . . ."

time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23, but there must be a live controversy at the time this Court reviews the case. *SEC v. Medical Committee for Human Rights* [404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972)], *supra.* The controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the above plaintiff has become moot.

Although appellants-intervenors admit that the proposed plaintiffs have a live and concrete interest in the continuance of this litigation, they argue that the mootness of the claims of the original plaintiffs ends the case. Appellants rely primarily on *Indianapolis School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1974) and its progeny. In *Jacobs* the plaintiff prevailed both in the district court and in the court of appeals as if on a class action, although no order was officially entered certifying it as such. During oral argument in the Supreme Court, it was revealed that the action was moot as to the individual plaintiff. The Supreme Court determined that the mootness of the individual claim rendered the suit subject to dismissal, since in the absence of actual certification as a class action, the action remained, in the opinion of the Court, an individual action. The Supreme Court accordingly vacated the judgment.

The appellants-intervenors cite several post-*Jacobs* cases holding that a court must dismiss an alleged class action where the individual claim of the purported class representative has become moot, in the absence of a proper certification of the class. *See Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976); *Sosna v. Iowa; Sannon v. United States*, 631 F.2d 1247 (5th Cir. 1980).

■ We do not find appellants' reliance upon the *Jacobs* line of cases persuasive. It is firmly established that where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot. *See Rogers v. Paul*, 382 U.S. 198, 199, 86 S.Ct. 358, 359, 15 L.Ed.2d 265 (1965); *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40 (5th Cir. 1974), *cert. granted*, 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976); *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). This procedure is deeply implemented in desegregation cases, where the mootness problem constantly arises because of protracted litigation and the eventual graduation of named plaintiffs. The court in *Kelley v. Metropolitan County Board of Education of Nashville*, 463 F.2d 732, 743 (6th Cir. 1972), *cert. denied*, 409 U.S. 1001, 93 S.Ct. 322, 34 L.Ed.2d 262 (1972), faced with an attack on a desegregation decree that resulted from seventeen years of litigation, aptly noted:

> [S]uch a class action as this dealing with continuing constitutional violations does not become moot because of years of delay (much of it attributable to appellants) which occasioned the graduation of the named, original student plaintiffs from the school system before final decision.

The appellants-intervenors argue, however, that this case is not a class action and therefore, as in the *Jacobs* line of cases, there is no viable action in which the proposed party plaintiffs could be added to, now that the claims of the original plaintiffs have been mooted. After reviewing the record, we simply cannot accept this contention; we find this case to be a class action.

This case was filed as a class action and proceeded to trial as a class action. The description of the class affected by the alleged discrimination in the complaint and the scope of the relief requested clearly indicate that the suit was intended to bene-

fit the entire class.[2] Although the complaint must have notified the defendant school boards that the original named plaintiffs sought class relief, the responsive pleading filed in this case "neither admitted nor denied the specific allegations that this case should proceed as a class action...." *Graves v. Walton County Board of Education*, 91 F.R.D. 457, 460 (Dist.M.D.Ga.1981). We infer from this silence that the defendant school boards knew of the class nature of this action and acquiesced in it. *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 456 (5th Cir. 1981). It is clear that throughout its pendency the district court regarded the case as a class action. On May 14, 1968, the court entered an order which began:

BOOTLE, District Judge:

> The plaintiffs, *suing for themselves and two classes*, (1) *Negro parents and pupils* of the public schools of Walton County, Georgia *who are similarly affected and injured* by the action of the defendants in maintaining and operating a racially segregated school system, and (2) *teachers* in the public schools of said County *similarly affected* by alleged actions of the defendants in penalizing and suspending them and threatening so to do

2. The following excerpts from the complaint clearly indicate the class nature of the complaint:

COMPLAINT
I. PARTIES
A. PLAINTIFFS.

Plaintiffs ANSON GRAVES, DIANE HARRIS, and MITCHAEL JACKSON are all minor Negro citizens ... sue on behalf of themselves and all other NEGRO school children of Walton County, Georgia, similarly situated, and who suffer common injuries, which class is too large to bring before this Court.

2. NEVADA WADE is a Negro adult ... residing in Walton County, Georgia.... He sues on behalf of himself and all other Negro parents of Walton County, Georgia, similarly situated, and who suffer common injuries, which class is too large to bring before this Court;

3. LILLIAM (sic) HILL and ALLIE BELL NORRIS are Negro adult citizens residing in Walton County, Georgia. They are under contract to teach at the Walton County Public Schools, specifically at the Social Circle Training School.... They sue on behalf of themselves and all other Walton County teachers, similarly situated, and who suffer

because of attempts to petition the defendants about the conditions within their racially segregated school system, bring their complaint against Walton County Board of Education (County Board)....

300 F.Supp. 188 at 191 (emphasis added).

Finally, on July 30, 1968, in its memorandum opinion, the court adopted as its injunctive order a proposed decree prepared and agreed upon by the defendant school boards. "The decree as prepared by the [defendant school boards] and adopted by the court provide[d] relief not for the individual plaintiffs but for the entire plaintiff class of [black] parents and students." 91 F.R.D. at 464. Throughout this process there was never a suggestion by anyone that the question of whether the plaintiff class should be certified was an issue to be decided. The defendant school boards from the outset considered "that the plaintiffs were entitled to injunctive relief and for their own benefit [consented to such relief and] urged the court to issue its decree." *Id.*

■ Having examined the record, it is clear that despite the lack of a formal order

common injuries, which class is too large to bring before this court.

....

11. This is a class action under Rule 23, Federal Rules of Civil Procedure, involving two classes, all members of each of which have been and continue to be similarly injured by the defendants....

WHEREFORE, the plaintiffs pray that this honorable court ... issue its preliminary and permanent injunction enjoining defendants ... from:

....

4. Preventing or interfering by any threats made under color of law to dispossess, disenfranchise, intimidate, or threaten the plaintiffs and the class which they represent from speaking freely, petitioning their government, or seeking equal educational opportunities for their children;

5. Preventing or interfering with the right of minor plaintiffs and the class that they represent from attending schools which are not racially segregated and which are not educationally equal with those schools attended by pupils of the white race, in every aspect, and more ....

certifying this case as a class suit, this case was in fact a class action and was specifically described and treated as such by the parties and the trial court.

In *Bing v. Roadway Express, Inc.*, this court held that the district court's implicit determination of the class action question sufficed in a suit in which all the parties and the court proceeded off the assumption that the action was a class action, despite the fact that there existed no formal order of certification by the district court. In *Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977) we summarized our holding in *Bing* with the statement "that a class action may be proper even if the trial court never made a formal, explicit determination pursuant to Rule 23(c)(1)." *Id.* at 165–66. Additionally, in *Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1979), this court was faced with an appeal in which a district court had obviously treated the case before it as a class action but had failed to enter a formal order of certification. This court had to determine the binding effect of such a judgment on the case before us. We held that "since [the case] was in fact a class action and was plainly described and treated as such by both courts that considered it, under the authority of *Bing* the lack of formal certification does not detract from the validity or res judicata effect of the judgment." Id. at 435. In *Sannon v. United States*, 631 F.2d 1247 (5th Cir. 1980) this court reaffirmed the principle recognized in *Bing*. There, in the face of petitioners' attempt to procure class wide relief despite having failed to move the trial court for a certification order throughout six litigious years, we distinguished the case on the basis that "[i]n *Bing* and its progeny we were able to infer that the trial court [had] approved the class action nature, . . . [of the lawsuits involved.]" Id. at 1251.

The principle recognized in *Bing* is applicable in this instance since the record evinces the class action status of this case; despite the lack of a formal order of class certification, this case was in fact a class action and was specifically described and treated as such by the parties and the trial court.

"To state at this late date that this was not a class action, 'would be to ignore the substance of the proceeding below in favor of an excessively formalistic adherence to the Federal Rules of Civil Procedure.'" *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (5th Cir. 1976) *quoting Bing v. Roadway Express, Inc.*, at 447. We affirm that portion of the district court's July 27, 1981 order adding additional party plaintiffs.

II. Intervention by Concerned Citizens of Walton County.

In its July 27, 1981 order, the district court vacated its previous decisions allowing the Concerned Citizens of Walton County to intervene. The Walton County parent group appeal this denial claiming a right to intervene under Fed.R.Civ.P. 24(a)(2). They also insist that permissive intervention was proper under section (b)(2) of that rule.[3] Concluding that the county parents have a right to intervene in this matter, and that the district court abused its discretion by not permitting their appearance, we reverse.

*Hines v. Rapides Parish School Board*, 479 F.2d 762 (5th Cir. 1973), established guidelines for the application of Rule 24 to school desegregation cases. There, "this court explored when and by what means parent groups might present complaints growing out of desegregation litigation. The proper course indicated was a petition for intervention." *Pate v. Dade County School Board*, 588 F.2d 501, 503 (5th Cir. 1979). The peti-

---

**3.** Rule 24(a)(2) creates a three-part test for intervention as of right. A party must be allowed to intervene if (1) he claims an interest in the subject of the action, (2) he is so situated that the disposition of the action may as a practical matter impair his ability to protect that interest, and (3) his interest is not adequately represented by existing parties. Under

Rule 24(b), a district court may permit intervention if to do so will not unduly delay or prejudice adjudication of the rights of the original parties. Unlike Rule 24(a), however, a district court's refusal to grant permissive intervention is reviewable only for abuse of discretion.

tion should "bring to the attention of the district court the precise issues which the new group sought to represent and the ways in which the goal of a unitary system had allegedly been frustrated." *Hines* at 765. The district court could then determine whether these matters had been previously raised and resolved and whether the issues sought to be presented by the new group were currently known to the court and parties in the initial suit. If the court finds that the issues raised by the movants "have been previously determined or if it [finds] that the parties in the original action were aware of these issues and completely competent to represent the interests of the new group, it could deny intervention. If the court felt that the new group had a significant claim which it could best represent, intervention would be allowed." *Id.*

As to the claimed right to intervene under subsection (2) of Rule 24(a), the district court, following the dictates of *Hines*, determined that the primary issue sought to be raised by the parent group—whether zone five county students should be permitted to return to Walton County schools—had been previously decided by the court in 1971. The district court also concluded "that the parties to the original lawsuit . . . as evidenced by their vigorous representation of their respective, differing views to the court, [were] keenly aware of [the issues raised by the movants,] and completely competent to represent the interests of all parents and students of Walton County, including the intervenor parents and their children." 91 F.R.D. at 475. We disagree with the district court's determinations.

In 1971, the district court did in fact deny the appellant county board's request to modify its original desegregation decree and return zone five county students to Walton County Schools. However, the Walton County parents' present request for relief from the 1968 desegregation order is not an attempt to relitigate the issues and facts raised in the previous request for relief. *Cisneros v. Corpus Christi Independent School District,* 560 F.2d 190, 191 (5th Cir. 1977). Key developments have taken place since the county board's request for relief in 1971. As indicated in the record, it has become a long-standing practice for the officials of the appellant Walton County School Board and the appellee Social Circle School Board to routinely consent to the movement of particular students between attendance zones for compelling reasons of a non-racial nature. (Tr., Nov. 26, 1979, Vol. I, pg. 192–93). Also, on August 26, 1980, the district court amended its 1968 decree with a formal order that provided for transfers of students from one zone to another by setting up reliable criteria for transfers due to a "compelling non-racial reason." (Tr., Aug. 26, 1980, Vol. III, pg. 667).

The school boards' long-standing practice of permitting student transfers for compelling non-racial reasons appears sound. The district court's subsequent modification of its 1968 decree ratifying such activity is approved. However, these developments contradict the district court's conclusion that the movants' petition for intervention raises the same issues that it had previously entertained in 1971. Over ten years of transfers have intervened. Housing patterns may have changed. The intervenors suggest that they are interested in today's problems. This appears to be facially reasonable.[4]

The district court further concluded that the existing parties in the case were keenly aware of the issues raised by the Walton County parents and could adequately represent their interest. The history of the case does not support this conclusion.

The parent group's children are students residing in zone five that do not attend

---

**4.** The appellants-intervenors have raised additional issues that are germane to this litigation which were not decided by the district court previous to its July 27, 1981 order. Examples of these issues raised are embodied in the mootness claim made by appellants-intervenors and their request for a "Youngblood" hearing. The participants in this litigation, including the district court and this court, considered the issues raised by the movants to be serious enough to warrant considerable attention.

Social Circle schools. Appellee Social Circle School Board's motion for enforcement on November 7, 1979 specifically requested the return of *all* students residing in zone five to Social Circle schools. Although the request for enforcement was directed to the movants' children and a ruling on such request would have a substantial impact on the lives and education of their children, neither school board has asserted the necessity of the Walton County parents being made a part of this litigation. This becomes particularly egregious considering the failure of both boards to affirmatively assert what appears to be a tenable position for the movants: that both school boards permitted some student transfers out of zone five for compelling nonracial reasons.

The evidence of record reveals that the school boards' primary motivation for proposing and assisting in the implementation of the 1968 desegregation decree was to prevent the loss of federal aid to their school systems. 91 F.R.D. at 461–62. It appears that as long as the desegregation order was insuring the continued receipt of federal funds the school boards were content with the directive, and had no motivation to represent the interests of the parent intervenors. The school boards have expended great effort in litigating over state funds as well. An interest in operating funds based upon numbers of students, however, does not equate with the criteria used for selecting specific students for particular schools.

█ Since the issues the parent intervenors sought to represent were not previously determined by the district court, and "the new group had a significant claim which it could best represent, intervention [should have been permitted]." *Hines* at 765. Consequently, the district court's July 27, 1981 order vacating its previous order permitting intervention is reversed.[5]

III. Order Denying Motion of Appellant Walton County Board of Education to Alter Attendance Zone Lines in Zone Five.

Appellant Walton County Board of Education appeals the district court's order of November 6, 1981, whereby the court denied its request to modify the 1968 desegregation order and to return zone five county students to Walton County schools.[6] The district court's denial was based on its explicit finding that granting the county board's motion would resegregate the two school systems.

---

5. "The parental interest that justifies permissive intervention is an interest in a desegregated school system." *Pate v. Dade County School Board*, 588 F.2d 501, 503 (5th Cir. 1979). The district court decided that intervention was improper since the parents were not seeking to challenge deficiencies in the implementation of the 1968 desegregation order; instead, they opposed such implementation. 91 F.R.D. at 414. The district court based its decision on *United States v. Perry Bd. of Ed.*, 567 F.2d 277 (5th Cir. 1978), where this court held that "parents seeking to intervene [in desegregation cases] must demonstrate an interest in a desegregated school system." There, we affirmed the district court's denial of intervention on the ground that the movants were attempting to challenge elements of the plan. *Id.* at 279. Although we acknowledge our holding in *Perry*, we find that the proposition for which it stands is inapplicable in this instance.

The parent intervenors contend that their position is consistent with a unitary school system and deny that their purpose is to frustrate the continued implementation of the court's orders. They speak in terms of asserting rights established pursuant to the court's orders and the transfer policy approved in the recent amendments thereto. At this point, we find our holding in *Perry* inapplicable. Consequently, the district court abused its discretion when it denied the parent groups petition for intervention. *Cf. Pate v. Dade County School Bd.*, 588 F.2d 501 (5th Cir. 1979).

This court has long recognized the intense interest of parents in the education of their children, and it has been solicitous of their opportunity to be heard. Intervention in suits concerning public schools has been freely allowed, and we see no reason why it should be denied here, especially in view of the lack of prejudice to other parties. Should future conduct indicate a different motive on the part of the Concerned Parents, the district court may take appropriate action.

6. The attendance of Walton County zone five students in the independent school district in the City of Social Circle was not a requirement of the November 6, 1981 order. That attendance was the mandate of the 1968 desegregation order, long final and not subject to review in this appeal. We here review only the district court's refusal to modify that which has been ordered for more than a decade.

The scope of our review here is controlled by Fed.R.Civ.P. 52. It provides that the findings of fact by a district court shall not be set aside unless "clearly erroneous." "A finding is clearly *erroneous* when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948) (emphasis in original). "This circuit has long relied on that formulation of the rule." *United States v. Texas Education Agency*, 647 F.2d 504, 506 (5th Cir. 1981) (and cases cited therein).

In *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 99 S.Ct. 2971, 61 L.Ed.2d 720 *rehearing den.*, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979), the Supreme Court addressed the obligation of the Courts of Appeals in school desegregation cases. There the Sixth Circuit Court of Appeals found that the defendants were operating a dual school system and that the finding of the district court to the contrary was clearly erroneous. *Brinkman v. Gilligan*, 583 F.2d 243, 253 (6th Cir. 1978). The Supreme Court stated that the role and duty of the Courts of Appeals are clear: it must determine whether the trial court's findings are clearly erroneous, sustain them if they are not, but set them aside if they are. *Id.* at 506–507. Accordingly, in *United States v. Texas Education Agency* this circuit acknowledged that it "should not ... overturn the decision of the trial court unless [it is] left with the definite and firm conviction that a mistake has been made." *Id., citing United States v. United States Gypsum Co.; Volkswagon of America, Inc. v. Jahre*, 472 F.2d 557, 559 (5th Cir. 1973). We have no such conviction. The evidence of record supports the district court's determination that the appellant county board "failed to show any satisfactory reasons for changing the decree as proposed in its motion." 91 F.R.D. at 489.

█ "Neither school authorities nor district courts are constitutionally required to make year by year adjustments of the ra-

cial composition of student bodies once the affirmative duty to desegregate has been accomplished and racial discrimination through official action is eliminated from the system." *Swann y. Charlotte-Mecklenberg Board of Education*, 402 U.S. 1, at 31–32, 91 S.Ct. 1267 at 1283, 28 L.Ed.2d 554 (1971). This circuit has recognized, however, "that a district court walks a narrow line between deciding whether unitary status has or has not been attained." *United States v. Texas Education Agency* at 507 *citing Fort Bend Independent School District v. City of Stafford*, 594 F.2d 73, 76 (5th Cir. 1979). We also adhere to the Supreme Court's pronouncement in *Columbus Board of Education v. Penick*, 433 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666, *reh. den.*, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979) that since *Brown v. Board of Education II*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), school boards are under an affirmative continuous duty "to take whatever steps might be necessary to convert to a unitary system." *Id.* 433 U.S. at 458–459, 99 S.Ct. 2947–2948; *citing Green v. County School Board*, 391 U.S. 430, 437, 88 S.Ct. 1689, 1693, 20 L.Ed.2d 716 (1968). Accordingly, in *United States v. Texas Education Agency*, this circuit declared that the school boards "continuing affirmative duty to disestablish the dual system is beyond question." 647 F.2d at 507. And, it is the responsibility of the boards of education and the district courts to prevent the reestablishment of such school systems. *Swann v. Charlotte-Mecklenberg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

█ As previously mentioned, the trial courts denial of the county board's motion to return zone five county students to Walton County schools was based on the court's explicit finding that granting such motion would, in effect, resegregate the two school systems:

As parents of Zone 5 children—99 white and black—who were attending county schools when they should have been attending city schools, these parents

by their intervention seek not to cause the 1968 agreed upon desegregation injunction of this court to be implemented but instead they seek to overturn, modify, and defeat that order. If successful in their purpose to thereby return all zone 5 outside of Social Circle children to county board schools, Social Circle's schools which are anticipated to have 557 white and 462 black students for the 1981–82 school year would have only 228 white and 367 black students—a change from the present 54% white and 46% black student body to a 38% white and 62% black student body. The Walton County schools in turn would become less black and more white.

91 F.R.D. at 472. The appellant county board admitted, in the lower court proceedings, that granting its motion for relief from the desegregation order would cause the Social Circle school system to change from a white majority to an overwhelmingly black majority. (Tr., Order of District Court, Nov. 6, 1981, Supp.R. Vol. III p. 146). Hence, the district court's refusal to alter its 1968 decree and return zone five county students to Walton County schools was proper, especially in light of its responsibility to prevent the reestablishment of a resegregated school system.

The above determination does not undercut the force of the principle underlying the quoted language from *Swann* :

> It does not follow that the communities served by [unitary] systems will remain demographically stable, for in a growing, mobile society, few will do so. Neither school authorities nor district courts are constitutionally required to make year-by-year adjustments of the racial composition of student bodies once the affirmative duty to desegregate has been accomplished and racial discrimination through official action is eliminated from the system.

402 U.S. at 31–32, 91 S.Ct. at 1283. Instead, we simply agree with the district court's determination that, "although desegregation has worked well under the existing zones ... [and] a good education is being provided for all students in both systems ... it is entirely too soon as against the showing made to authorize the change requested by one system and opposed by the other." 91 F.R.D. at 489. "This circuit has addressed the necessity for the district courts to retain jurisdiction over such cases in order to insure the proper implementation of the desegregation plan and the achievement of the ultimate goal—a unitary school system." *United States v. Texas Education Agency* at 508. We are convinced that this district court is doing just that. Accordingly, the district court's order of November 6, 1981 is AFFIRMED.