LEON W. BRADLEY, Jr., Et al., etc., Plaintiffs–Appellees,

v.

PINELLAS COUNTY SCHOOL BOARD, Et al., Defendants–Appellees,

and

Dan E. Schramek, Marcus D. Griffith, Movants–Appellants.

No. 91–3344.

United States Court of Appeals, Eleventh Circuit.

June 5, 1992.

Dyril L. Flanagan, St. Petersburg, Fla., for movants-appellants.

Enrique Escarrez, Ill., Roger Plata, St. Petersburg, Fla., Norman J. Chachkin, New York City, Bruce Taylor, Largo, Fla., for appellees.

Before FAY, Circuit Judge and DYER * and CLARK *, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

This is an appeal from the denial of a motion to intervene in a school desegregation case. The district court, without holding an evidentiary hearing, determined that the proposed intervenors were merely dissatisfied with the manner in which the existing parties were attempting to achieve a unitary school system and, therefore, were not entitled to intervene. We reverse and remand for an evidentiary hearing.

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

## Background

The named plaintiffs initiated this suit in 1964 on behalf of the class of all Negro children eligible to attend the public schools of Pinellas County, Florida alleging that the Pinellas County School Board was operating a dual school system. In January 1965, the district court entered summary judgment against the school board and ordered it to eliminate the separation of black and white students, teachers, principals, and other school employees. After much litigation, the district court entered a final desegregation order in July 1971. The order provided for a 30 percent maximum black student ratio in any school and a minimum black student ratio that varied by grade level but was the same throughout the county.

Since July 1971, the existing parties have entered into a series of joint stipulations, each of which the district court has adopted as an amendment to the desegregation order. Among the most significant of these amendments is the order of May 1977. Pursuant to this order, Pinellas County was divided into two large zones, north and south. The 30 percent maximum black student ratio remained the same throughout the county. The minimum black student ratio, however, was changed. The order established a lower minimum percentage for the north zone, which had a very small black population, and a higher minimum percentage for the south zone, which had a large black population. The order also established procedures for making enrollment projections and correcting racial imbalances. Specifically, the order provided that, if it were projected that the black student ratio at a school would exceed the 30 percent maximum and the school was under capacity, then white students would be brought into the school to decrease the black student ratio. On the other hand, if the school were over capacity, then black students would be shifted out of the school to decrease the black student ratio.

In June 1990, Dan Schramek, a white man whose children attend Pinellas County schools, and Marcus Griffith, a black man whose children attend Pinellas County schools, filed the motion to intervene that is the subject of this appeal. The proposed intervenors allege that the school board discriminates against black students by causing the burden of busing, which is necessary to maintain the court-ordered maximum and minimum black student ratios in some schools, to fall on black students and not white students. More specifically, they allege that the school board, by engaging in invidious discriminatory practices, implements the desegregation plan in such a manner that black students are bused out of their neighborhoods to attend schools while white students are permitted to attend neighborhood schools. The discriminatory practices that allegedly advance this end are as follows.

First, the proposed intervenors allege that the school board fails to adhere to state student capacity figures; it manipulates these figures to make schools in which the black student ratio is over 30 percent appear to be over capacity, when the schools are actually under capacity; this manipulation of the capacity figures allows the school board to bus black students out of a neighborhood to decrease the black student ratio, rather than requiring it to bus white students into the neighborhood to adjust the ratio. The proposed intervenors allege specifically that this practice is in violation of the May 1977 amendment to the desegregation order and that the existing plaintiffs in this suit have declined to insist that the school board stop the practice.

Second, the proposed intervenors allege that white students in integrated neighborhoods are allowed to attend their neighborhood schools by applying for special attendance permits, applications for which are mailed to parents of white students but not to parents of black students. The result is that black students who live in integrated neighborhoods are being bused out of their neighborhoods to attend schools while their white neighbors are allowed to attend neighborhood schools.

Third, the proposed intervenors allege that the school board provides inferior and inadequate school facilities in the integrat-

ed neighborhoods in the south part of the county; builds and expands facilities in all-white neighborhoods in the north part of the county; and addresses the over-crowding of schools in integrated neighbor-hoods by busing black students away from their neighborhoods, using the desegrega-tion order as justification. Thus, new and improved neighborhood schools are being built for the all-white neighborhoods in the north at the expense of the integrated neighborhoods in the south, thereby caus-ing more white families with school-age children to move to all-white neighborhoods rather than to integrated neighborhoods.

The proposed intervenors allege that these practices will result in the destruc-tion of integrated neighborhoods, such as the one in which they reside. In such neighborhoods, they allege, black and white children live and play together, but black children are bused out of the neigh-borhood to attend schools while white chil-dren are permitted to attend neighborhood schools. This discrimination against black children is in violation of the desegregation order. The proposed intervenors specify that they do not oppose the desegregation order; rather, they seek to require the parties to abide by it.

Both the plaintiffs and the school board opposed the motion to intervene. The dis-trict court, without holding an evidentiary hearing, denied the motion.

### Discussion

 Generally, when parents move to intervene in a school desegregation case, the district court must conduct an eviden-tiary hearing and enter findings of fact based on an adequate record.[1] The denial of a motion to intervene entered without an evidentiary hearing and articulation of fac-tual findings has been upheld when it is "more than clear that [the proposed inter-

venors] are not entitled to intervene."[2] Thus, in this case, we will uphold a district court's decision if it is clear that the pro-posed intervenors' allegations, which we must take as true to the extent they are not refuted by the record, fail to establish that they are entitled to intervene. Be-cause these allegations, if substantiated, establish that the proposed intervenors are entitled to intervene, we reverse the dis-trict court.

In *Hines v. Rapides Parish School Board*,[3] the former Fifth Circuit set the standard for intervention in school desegre-gation cases:

The petition for intervention would bring to the attention of the district court the precise issues which the group sought to represent and the ways in which the goal of a unitary system had allegedly been frustrated. The district court could then determine whether these matters had been previously raised and resolved and/or whether the issues sought to be presented by the new group were cur-rently known to the court and parties in the initial suit. If the court determined that the issues these new plaintiffs sought to present had been previously determined or if it found that the parties in the original action were aware of these issues and completely competent to rep-resent the interest of the new group, it could deny intervention. If the court felt that the new group had a significant claim which it could best represent, inter-vention would be allowed. [Footnote omitted.][4]

As more recent cases, following *Hines*, make clear, "the parental interest that just-ifies permissive intervention is an interest in a desegregated school system."[5] Thus, the court in *Pate v. Dade County School Board* upheld the denial of the motion to intervene because the parents did not seek to challenge deficiencies in the implementa-

---

1. *Adams v. Baldwin County Board of Education,* 628 F.2d 895, 897 (5th Cir.1980).

2. *United States v. Perry County Board of Edu-cation,* 567 F.2d 277, 280 (5th Cir.1978).

3. *Hines v. Rapides Parish School Board,* 479 F.2d 762 (5th Cir.1973).

4. *Id.* at 765.

5. *Pate v. Dade County School Board,* 588 F.2d 501, 503 (5th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979).

tion of the desegregation order; rather, they simply opposed implementation of the order. And in *United States v. Perry County Board of Education*, the court, upholding denial of the motion to intervene where the parents' group sought to challenge the site of a new school facility, noted:

> Nothing in their brief or in their petition for intervention in the district court indicates that they are challenging the location of the school on the ground that it impedes establishment of a unitary school system. Instead, they oppose the location on various policy grounds which, though important, are unrelated to desegregation and the establishment of a unitary school system. [Footnote omitted.] [6]

More recently, in *Graves v. Walton County Board of Education*,[7] the court reversed the denial of the motion to intervene because the parents' group, which sought to return their children to neighborhood schools, sought to represent issues that had not been decided by the district court and that the existing parties had declined to represent. In response to arguments that the proposed intervenors sought only to challenge elements of the desegregation plan, the court noted:

> The parent intervenors contend that their position is consistent with a unitary school system and deny that their purpose is to frustrate the continued implementation of the court's orders. They speak in terms of asserting rights established pursuant to the court's orders and the transfer policy approved in the recent amendments thereto.

. . . . .

This court has long recognized the intense interest of parents in the education of their children, and it has been solicitous of their opportunity to be heard. Intervention in suits concerning public schools has been freely allowed, and we see no reason why it should be denied here, especially in view of the lack of prejudice to other parties. Should future conduct indicate a different motive on the part of Concerned Parents, the district court may take appropriate action.[8]

Applying these precedents to this case, the proposed intervenors, assuming they can substantiate their allegations, are entitled to intervene. Not only is the proposed intervenors' position consistent with a unitary system, but the school board's alleged implementation of the desegregation plan, about which the proposed intervenors complain, is also *contrary* to a unitary system because it discriminates against black students. Thus, the proposed intervenors have articulated an interest in a desegregated school system that justifies intervention. Unlike the proposed intervenors in *Pate*, the proposed intervenors in this case assert rights established by the district court's desegregation orders, specifically, the right of black students to equitable busing as established by the district court's May 1977 amendment to its original desegregation order. Thus, they seek to enforce the desegregation order, not oppose its implementation. And unlike the proposed intervenors in *Perry*, the proposed intervenors in this case allege that the discriminatory practices about which they complain, specifically, discriminatory busing and building policies, impede the establishment of a unitary system. Like the intervenors in *Graves*, the proposed intervenors in this case seek to represent issues that have not been decided by the district court and that the existing parties have declined to represent. Thus, the proposed intervenors' allegations satisfy the standard for intervention set out in *Hines:* they challenge alleged deficiencies in the implementation of the district court's desegregation order; they articulate the means by which the school board is frustrating the goal of a

---

6. *Perry,* 567 F.2d at 279–80. *See also, Valley v. Rapides Parish School Board,* 646 F.2d 925 (5th Cir. Unit A May 1981) (intervention will not be permitted to challenge elements or facets of a desegregation plan), *on rehearing,* 653 F.2d 941 (5th Cir. Aug. 1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982).

7. *Graves v. Walton County Board of Education,* 686 F.2d 1135 (Former 5th Cir. Unit B 1982).

8. *Id.* at 1142 n. 5.

unitary school system; they raise issues that have not been previously raised in or resolved by the district court; and they demonstrate that the present parties to this action are unwilling to raise these issues. Taking the proposed intervenors' allegations as true, they are entitled to intervene.

Of course, the proposed intervenors may be unable to substantiate their allegations. Accordingly, it is appropriate for the district court to hold an evidentiary hearing on the motion to intervene. If the allegations are substantiated, the motion to intervene should be granted.[9]

### Conclusion

The proposed intervenors raise allegations that, if true, would entitle them to intervene in this action. The proposed intervenors demonstrate an interest in a desegregated school system and allege that the school board is frustrating the goal of such a system. Specifically, the proposed intervenors allege that the school board is violating the district court's desegregation order and amendments thereto by busing black students rather than white students and by manipulating school capacity figures and building new schools in distant all-white neighborhoods to justify its racially discriminatory busing policy. Moreover, the proposed intervenors demonstrate that the existing parties to this action are unwilling to bring these issues before the district court. Accordingly, the district court erred in declining to hold an evidentiary hearing on the motion to intervene.

For the foregoing reasons, the district court's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

---

**9.** The Supreme Court very recently held that a district court may relinquish its supervision and control over those aspects of a school system in which there has been compliance with a desegregation decree even if other aspects of the system remain in noncompliance. *Freeman v. Pitts,* — U.S. —, 112 S.Ct. 1430, 1443, 118 L.Ed.2d 108 (1992). We recognize that this holding may provide the impetus for one of the existing parties in this case to request that the district court relinquish its supervisory powers over aspects of the Pinellas County School System. If the proposed intervenors can substantiate their allegations, they must be permitted to intervene before the district court considers such a request, as the allegations would be relevant to the request. For example, the proposed intervenors allege that the school board has not achieved unitary status and, in fact, is engaging in invidious discriminatory practices in the areas of transportation and facilities. *See id.* 112 S.Ct. at 1443 ("The *Green [v. New Kent County School Board,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968) ] factors [which include transportation and facilities] are a measure of the racial identifiability of schools in a system that is not in compliance with *Brown [v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) ]"). The proposed intervenors also allege that the school board's discriminatory practice of building new facilities in all-white neighborhoods has contributed to racial imbalance in the Pinellas County schools. *See id.* 112 S.Ct. at 1457 (Blackmun, J. concurring) (before district court relinquishes supervision, the school board must prove its conduct did not contribute to racial imbalance in the schools). Accordingly, before entertaining any request to relinquish its supervision, the district court must hold an evidentiary hearing and rule on the motion to intervene.