Andrew L. MANNINGS by his father and next friend Willie MANNINGS, et al., Plaintiffs,

v.

SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA (Formerly Board of Public Instruction of Hillsborough County, Florida), et al., Defendants.

No. 58–3554–Civ–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Aug. 16, 1993.

**134**

Francisco Rodriguz, Warren H. Dawson, Tampa, FL, for plaintiffs.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Walter Crosby Few, Few & Ayala, Tampa, FL, for defendants.

John William MacKay, John W. MacKay, P.A., Tampa, FL, for intervenors-plaintiffs.

### ORDER DENYING MOTION TO INTERVENE

KOVACHEVICH, District Judge.

Before this Court for consideration is Proposed Intervenors', NORMAN EDWIN ARMSTRONG, JR., BRYAN TYLER ARMSTRONG, CARLTON LEWIS, EMANUEL LEWIS, ROBERT JOHN BURR, CHERYL ANN BURR, STEVEN JONATHAN BURR, DANIEL RENEE BURR, ARCHIE LEE McRAE, MAUREEN ELROD McRAE AND AMEER McRAE, (hereinafter "Proposed Intervenors") Motion To Intervene (Docket No. 489), as well as Plaintiffs' and Defendants' responses to the Proposed Intervenors' motion. (Docket Nos. 498 and 499)

### I. FACTUAL AND PROCEDURAL HISTORY

The Proposed Intervenors are children and parents who reside in the Timberlane subdivision of that part of the City of Tampa known as Town and Country. Proposed Intervenors assert that they are, or will be, directly affected by the implementation of this Court's Consent Order adopting the stipulations of the Plaintiffs and Defendants in this matter, also known as the Middle School Task Force Report (Hereinafter "Task Force Report").

In order to prevent the implementation of the Task Force Report, Proposed Intervenors have undertaken a concerted course of action. This course of action included the filing of state court and administrative proceedings alleging various theories and seeking to prevent the implementation of new student assignments contemplated in the Task Force Report. When this Court enjoined the Proposed Intervenors from continuing with their state actions, because such proceedings interfered with this Court's jurisdiction, the Proposed Intervenors sought to intervene and become parties to this litigation.

The Proposed Intervenors have stated a prima facie claim for intervention as matter of right in this litigation pursuant to F.R.C.P. 24(a)(2). The Proposed Intervenors state that they have an interest in the goal of a unitary school system; that this interest gives them a direct, substantial, and legally protectable interest in this proceeding; that they are so situated that the disposition of this matter may impair the Proposed Intervenors' ability to protect that interest; and that the Proposed Intervenors' interests are not adequately represented by the existing parties. Further, Proposed Intervenors assert that the Task Force Report frustrates the goal of a unitary school system. Thus, the Proposed Intervenors oppose the implementation of the Task Force Report as it is currently structured.

Because this Court, and this Circuit, have long recognized the intense interest of parents in the education of their children, this Court granted the Proposed Intervenors' motion for evidentiary hearing regarding their motion for intervention. The sole purpose of the hearing was to allow the Proposed Intervenors a chance to present evidence to prove that their intervention in this matter is appropriate under the law.

The evidentiary hearing commenced on July 20, 1993 and concluded on August 4, 1993. Although Proposed Intervenors were originally allotted one hour for this hearing, this Court allowed the Proposed Intervenors' presentation of evidence to extend, all tolled, approximately three hours. Proposed Intervenors brought forth three witnesses, one expert in land use planning, and two parents of children who will be directly affected by the implementation of the Task Force Report. The Defendants and Plaintiffs were

allowed to cross-examine the Proposed Intervenors' witnesses. Further, although both the Plaintiffs and Defendants were each allotted half an hour to present evidence in opposition to the Proposed Intervenors' motion to intervene, neither party brought forth any evidence. After the Proposed Intervenors finished their presentation of evidence, all parties were allowed to make their arguments to this Court, based on the evidence presented.

Thus, the Proposed Intervenors have had a fair and exhaustive opportunity to be heard and to present evidence of their claimed right to intervene. This Court, after careful consideration of that evidence, hereby DENIES the Proposed Intervenors' Motion To Intervene based upon the following reasoning.

## II. DISCUSSION

■ Proposed Intervenors seek to intervene in this case as a matter of right pursuant to F.R.C.P. 24(a)(2), and have stated a prima facie claim for intervention under that rule. However, the former Fifth Circuit, now the Eleventh Circuit, has previously held that proposed intervenors/parents do not necessarily have a right to intervention in school board desegregation cases. *See United States v. Perry County School Bd. of Education,* 567 F.2d 277, 279 (5th Cir.1978). This Circuit has declined to follow the broad approach to intervention approved by other jurisdictions in school board desegregation cases, and has instead developed a specific standard by which district courts may permit intervention of parents. *Id. See also Bradley v. Pinellas County School Board,* 961 F.2d 1554, 1556 (11th Cir.1992) (quoting *Hines v. Rapides Parish School Board,* 479 F.2d 762 (5th Cir.1973)).

■ The only parental interest that justifies permissive intervention in a school board desegregation case is an interest in a desegregated, or unitary, school system. *Bradley,* 961 F.2d at 1566. Further, in order for proposed intervenors to meet the Eleventh Circuit test for permissive intervention, the proposed intervenors must set forth the precise issues which they seek to represent and the ways in which the goal of a unitary system has allegedly been frustrated. The proposed intervenors must also show that the issues they seek to present either have not been raised and resolved by the existing parties, or that the issues were not known to the court and the existing parties prior to the proposed intervenors' motion. *Bradley,* 961 F.2d at 1566.

During the evidentiary hearing, the Proposed Intervenors asserted that the goal of a unitary school system is frustrated by the Task Force Report in three ways. According to the Proposed Intervenors, the goal of a unitary school system is frustrated by the Task Force Report because its plan for school desegregation: (i) transports students out of naturally integrated communities to schools in other communities; (ii) prevents black students from ever attaining a majority of the student population in schools located in predominantly black communities; and (iii) bases pupil assignments solely on the race of the student, categorizing students either as black or white. Further, the Proposed Intervenors maintained that the existing parties neither represented their interests, nor had considered the issues they sought to pursue in the litigation.

### A. UNITARY SCHOOL SYSTEM

■ The legal definition of "unitary" as it pertains to school systems is not a precise concept with a fixed meaning. *Freeman v. Pitts,* —— U.S. ——, ——, 112 S.Ct. 1430, 1434, 118 L.Ed.2d 108 (1992). However, the United States Supreme Court has come up with a list of factors to be considered in determining whether a plan actually furthers the goal of a unitary system. *Green v. New Kent County School Bd.,* 391 U.S. 430, 436, 88 S.Ct. 1689, 1693, 20 L.Ed.2d 716 (1968). The factors which should be considered include the administration, student assignment, personnel, extra-curricular activities and resource allocation for each school in a system, in addition to the districting of the entire school system, and whether the school system is proceeding to desegregate its schools in good faith. *Id.* at 436 and 439, 88 S.Ct. at 1693 and 1695. The correction of racial imbalance or discrimination in each of these factor areas was prescribed by the Supreme

Court as the way to achieve a unitary school system. The ultimate goal is a school system with schools that are racially nonidenifiable, i.e. not white schools and black schools, but rather just schools. *Id.* at 441, 88 S.Ct. at 1696.

The Proposed Intervenors' complaints do not allege discrimination against one race of students within any of the *Green* factor areas. Rather, the Proposed Intervenors actually seek a less unitary school system through at least one of their allegations. By complaining that black students cannot maintain a majority of the population in black communities, the Proposed Intervenors actually contravene the ultimate goal of racially unidentifiable schools. A school with a majority black population would undoubtedly be identifiable as a black school. The racial identification of schools is the antithesis of a unitary school system. Therefore, the Proposed Intervenors' allegation that the Task Force Report frustrates the goal of a unitary school system because it prohibits black students from attaining a majority of the population in schools in predominantly black communities is without merit.

Further, the Proposed Intervenors' assertion that the Task Force Report frustrates the goal of a unitary school system because it transports students from naturally integrated communities to schools in nonintegrated communities is likewise meritless. The Proposed Intervenors, through this assertion, show their fundamental lack of understanding of the purposes of court-ordered desegregation.

 School boards, in school systems found to have engaged in past discrimination, are charged with an affirmative duty to take whatever steps might be necessary to convert a formerly discriminatory school system to a unitary school system. *Green,* 391 U.S. at 437–38, 88 S.Ct. at 1693–94. The district courts retain jurisdiction to supervise the implementation of plans instituted by the school boards. This remedial action is limited to the elimination of racial discrimination in the school system. The integration of communities is not under the jurisdiction of the district courts. Of course, in constructing desegregation plans, a school board may

consider the effects to neighborhood schools in integrated communities. But the focus of a desegregation plan is not on individual communities, nor is it on individual schools. Rather, the focus of a desegregation plan is on the school system in its entirety.

Ideally, all communities in Hillsborough County should be integrated, as should all Hillsborough County schools. However, the planning of communities is beyond the expertise and the jurisdiction of this Court. The only responsibility this Court is charged with in this case is the supervision of remedial action to rectify past discrimination in the school system of Hillsborough County. While it is unfortunate that children of an integrated neighborhood must travel farther than their parents might wish to attend school, this situation is not indicative of the frustration of the goal of a unitary school system.

Finally, the Proposed Intervenors' assert that the Task Force Report frustrates the goal of a unitary school system because it categorized students as either black or white, white being essentially all nonblack students. The Proposed Intervenors challenge the arbitrariness of this categorization and student assignment. Again the Proposed Intervenors fail to consider the overall purpose of the desegregation plan contained in the Task Force Report.

The plan's purpose is to remedy past de jure discrimination against black students in Hillsborough County. In order to remedy this past discrimination, the Task Force Report seeks to integrate schools through student assignments, in addition to other remedial actions. As the United States Supreme Court pointed out in *Swann v. Charlotte-Mecklenburg Bd. of Education,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), the nature of the violation of constitutional rights determines the scope of the remedy. Thus, while student assignment by race may seem arbitrary, and perhaps even wrong, the rationale for student assignment on this basis is to rectify past discrimination. Such remedial action has long been approved by the United States Supreme Court in desegregation cases. *See Swann,* 402 U.S. at 27, 91 S.Ct. at 1281. As with all remedial

plans, this plan is neither perfect nor ideal. However, it is effective in equalizing the racial balance of student populations in the schools of Hillsborough County.

Further, the Proposed Intervenors do not explain how the consideration of race in determining student assignment frustrates the goal of a unitary school system. In fact, the Proposed Intervenors' own expert, Mr. McLaughlin admitted that the ultimate goal of the Task Force Report is an integrated school system, albeit integrated in a forced and harmful fashion according to Mr. McLaughlin. Whether the Task Force Report integrates as painlessly and efficiently as might be desired is beside the point of our inquiry. The fact is, as the proposed intervenors, through their own expert admit, the Task Force Report's ultimate goal is that in the year 2000 the Hillsborough County School System will achieve a unitary status.

## B. PERMISSIVE INTERVENTION

█ As is illustrated above, the Proposed Intervenors have failed to bring to this Court's attention any precise way in which the Task Force Report actually frustrates the goal of a unitary school system. The real complaint of the Proposed Intervenors regarding the Task Force Report is that under the plan proposed by that report their children will have to travel by bus to a school outside of their immediate neighborhood.

Each of the proposed witnesses paid lip service to the talisman "frustration of a unitary school system", with the witnesses often defining "unitary school system" in whatever fashion suited their purpose, instead of restricting themselves to the recognized meaning of the phrase within the realm of school desegregation. After touching this base, most of the testimony concentrated upon the evils of busing small children to schools beyond their neighborhood. One of the Proposed Intervenors' witnesses stated that there should not be any busing of children to schools beyond their closest neighborhood schools for any purpose whatsoever.

Among the concerns of the Proposed Intervenors with regard to busing are the safety and welfare of the children, the loss of quality time the children and their parents suffer due to the commute, and the amount of taxpayer money needed to finance the transportation. These concerns are real and valid. Such concerns however, though important, are unrelated to desegregation and the establishment of a unitary school system. *See United States v. Perry County Bd. of Education,* 567 F.2d 277, 280 (5th Cir.1978).

Thus, not only have the Proposed Intervenors failed to establish any way in which the Task Force Report frustrates the goal of a unitary school system, but the actual interests that lie at the heart of the Proposed Intervenors' motion are other than the goal of a unitary school system. Further, the issues raised by the Proposed Intervenors with regard to busing and the preference of parents that their children attend neighborhood schools are neither new issues, nor issues that the Hillsborough County School Board has failed to consider when participating in the creation of the Task Force Report.

Both Mrs. Burr and Mr. Lewis testified that they attended Hillsborough County School Board meetings and made their concerns known to the Defendants. Although both witnesses felt they were restricted in the forum of the school board meetings, both stated that they, or members of their neighborhood or community organization, were heard on these issues. Thus, the concerns raised by the Proposed Intervenors have already been raised and resolved by the Defendants in this matter.

Accordingly, the Proposed Intervenors' motion to intervene must fail because the issues they raise fail to meet the standard for permissive intervention. Proposed Intervenors have failed to allege any actual way in which the Task Force Report frustrates the goal of a unitary school system. Although the Proposed Intervenors allege that the parties do not adequately represent their interests, this test is not a part of the Eleventh Circuit's standard for permissive intervention is school desegregation cases. Additionally, Proposed Intervenors have been unable to show that their concerns are new issues that have not previously been considered by the parties to this matter.

Accordingly it is

**ORDERED** that the Proposed Intervenors' Motion For Intervention (Docket No. 489) be **DENIED** and other motions filed by the Proposed Intervenors, specifically Proposed Intervenors' Motion For Order Relinquishing This Court's Supervision Of Student Assignment (Docket No. 506) be **DENIED**, as moot.

**DONE AND ORDERED.**