Todd FOX, Edward R. Detweiler, Stephanie Vaiano, James B. Cullen, Christine Marie Odell, Steven Gawley, Daniel Altman, Philip Jay Botwinik, Jeffrey S. Zellan and Jaclyn Bernstein, Plaintiffs,

v.

The BOARD OF TRUSTEES OF the STATE UNIVERSITY OF NEW YORK, and Clifton R. Wharton Jr., Individually and as Chancellor of the Board of Trustees and the State University of New York College at Cortland, and James M. Clark, Individually and as President of the College at Cortland, and the State University at Binghamton, and Clifford D. Clark, Individually and as President of the State University of New York at Binghamton, and Vincent O'Leary, Individually and as President of the State University of New York at Albany, and the State University of New York College of Arts and Sciences at Potsdam, and Humphrey Tomkin, Individually and as President of the College of Arts and Sciences at Potsdam, Defendants.

No. 82–CV–1363.

United States District Court, N.D. New York.

May 7, 1993.

Duane Morris & Heckscher, Philadelphia, PA (Henry T. Reath, Wayne A. Mack Jr., Richard W. Riley, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, NY (O. Peter Sherwood, Sol. Gen., Peter H. Schiff, Deputy Sol. Gen., Lawrence L. Doolittle, Daniel Smirlock, Asst. Attys. Gen., of counsel), for defendants.

McCURN, Senior District Judge.

Very basically, this case involves a constitutional challenge to a State University of New York ("SUNY") resolution prohibiting group sales demonstrations in SUNY facilities, such as dormitories. Plaintiffs, ten individuals who at the commencement of this action were students in the SUNY system, contend that that resolution runs afoul of the First Amendment. This case has been proceeding through the federal court system for over ten years; familiarity with the underlying facts and proceedings is presumed. Therefore, only the facts necessary to an understanding of the defendants' motion for reconsideration will be set forth herein.

### BACKGROUND

On May 24, 1991, this court held that the present action had been rendered moot because in the intervening years the plaintiff students had graduated. *Fox v. Bd. of Trustees of State Univ. of New York*, 764 F.Supp. 747, 757 (N.D.N.Y.1991) (*"Fox V"*). Despite that holding, the court allowed amendment of the complaint pursuant to Fed.R.Civ.P. 15(a). *Id.* at 758–59. The court did so even though plaintiffs had not formally moved to amend,[1] reasoning that the defendants would not be prejudiced by allowing such an amendment. *Id.* at 758. The court was also concerned (in hindsight perhaps unduly so) with achieving a final resolution of this litigation, involving, as it does, important First Amendment issues with potentially widespread implications.

Shortly thereafter, on June 10, 1991, the defendants moved for modification of the court's May 24, 1991 memorandum-decision and order pursuant to Fed.R.Civ.P. 54(b). Specifically, defendants seek to have this court modify that order to dismiss the complaint altogether on mootness grounds, rather than allowing plaintiffs to amend their complaint to cure that defect. In the alternative, if the court denies that aspect of defendants' motion, the defendants seek to have the court's May 24, 1991 order modified to allow for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[2]

Not surprisingly, plaintiffs vigorously oppose this motion. They argue first that there is ample authority for allowing the

---

1. At the time, the court believed that the defendants had also viewed plaintiffs' informal request to amend as a motion for such relief because they seem to have responded to it as such. *Fox V*, 764 F.Supp. at 757, n. 45. The defendants have made it abundantly clear on this motion, however, that the court made an incorrect assumption in that regard. *See* Affidavit of Daniel Smirlock (June 5, 1991) at ¶ 3. Indeed, defense counsel avers that if he had considered that request as a formal motion, he would have fully pointed out "the obvious logical, legal and factual problems with such a motion." *Id.*

2. That statute provides, in part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order:....

28 U.S.C. § 1292(b) (West Supp.1993).

substitution and/or addition of new plaintiffs in a moot action under either Rule 15 or 21 or both.[3]  Plaintiffs next argue that this action is not moot because the original plaintiffs are entitled to nominal damages, regardless of the fact that such damages were not expressly sought in their verified amended complaint.[4]  In the event this court reaches the issue of whether an interlocutory appeal should be allowed here, the plaintiffs contend that it should not because the defendants cannot satisfy the statutory requirements for such an appeal under 28 U.S.C. § 1292(b). Finally, the plaintiffs stridently declare that, "[a]s a matter of fair advocacy, one would expect that a party to a lawsuit would refrain from taking such an outlandish position in criticizing its opponent's arguments, let alone an Order of a court...."  Plaintiffs' Opposition Memorandum at 27.  On that basis, plaintiffs also are seeking Rule 11 sanctions in the form of attorneys' fees and costs in opposing this motion.

As part of their opposition papers, the plaintiffs have submitted a proposed amended complaint naming not only the ten original student plaintiffs who have graduated or moved from SUNY dormitories, but also eight students who, as of June, 1991, were enrolled in the SUNY system.  Four of the eight prospective plaintiffs are or were officers in the student government at SUNY, and some of them were planning to reside in SUNY dormitory housing during the 1991–92 academic year.[5]

In accordance with Local Rule 10(m) for the Northern District of New York, the court

did not require oral argument on this motion for reconsideration.

## DISCUSSION

The Second Circuit has recognized that "'the major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.''"  *DiLaura v. Power Authority of the State of New York,* 982 F.2d 73, 76 (2d Cir.1992) (quoting *Virgin Atl. Airways v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)) (quoting in turn 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure ("Federal Practice") § 4478, at 790 (1981)).  Furthermore, subject matter jurisdiction, which is at the heart of defendants' motion herein, is "particularly suited for reconsideration...."  *Id.* 982 F.2d at 77 (citation omitted).  As will be discussed, upon further reflection, the court is convinced that its May 24, 1991, decision was in clear error, but only insofar as it allowed plaintiffs to amend their complaint to avoid dismissal because of mootness.

In responding to the defendants' motion, plaintiffs first address the propriety of the court's decision allowing plaintiffs to amend their complaint, even though the court found that the action had become moot.  Then the plaintiffs go on to dispute the court's finding that this action had become moot.[6]  Obviously if the court agrees with

---

**3.**  Notably, Rule 21 did not provide the basis for the court allowing amendment of the complaint in *Fox V.*

**4.**  Since the inception of this lawsuit in December, 1982, plaintiffs have filed three subsequent amended complaints.  It is the second amended complaint, filed with the court on January 30, 1986, which was the focus of the court's attention in *Fox V* and which continues to be the focus of the court's attention on this motion.  Thus, unless otherwise stated, all references herein are to that second amended complaint.

**5.**  It cannot be ascertained from the proposed amended complaint, or, for that matter, from any other documentation presently before the court when the prospective plaintiffs will graduate from SUNY, or whether some of them may al-

ready have done so.  The court assumes, however, that plaintiffs' counsel had the foresight to include in this proposed amended complaint at least one prospective plaintiff who has not yet graduated from SUNY.

**6.**  The court notes in passing that it was the defendants and not the plaintiffs who moved for reconsideration of the court's decision in *Fox V;* the plaintiffs did not file a cross-motion for reconsideration.  In keeping with the liberal manner in which the court has overlooked, where possible, procedural irregularities by the parties to this litigation, *see, e.g., Fox V,* 764 F.Supp. at 757, n. 45, it will continue to do so.  Therefore, even though the plaintiffs did not expressly move for reconsideration, the court will nonetheless consider this argument for reconsideration raised by the plaintiffs.

the plaintiffs that it erred in finding this action moot, then there will be no need to reconsider whether the court should have allowed plaintiffs to amend their complaint to avoid mootness. The court will therefore first address the plaintiffs' argument that they are entitled to nominal damages, and thus their action has not become moot.

## I. Nominal Damages

In *Fox V*, while recognizing that "even 'nominal damages' will save a case from mootness," this court nonetheless held that plaintiffs could not avoid the fact that their action had become moot by relying upon a claim for nominal damages, because such claim was not alleged in, or could not even be inferred from, their complaint. *Fox V*, 764 F.Supp. at 756 (footnote omitted). On this motion for reconsideration, plaintiffs continue to insist that the availability of nominal damages precludes a finding of mootness here. Plaintiffs make several arguments in support of their position, none of which are persuasive.

First plaintiffs assert that the fact that the court in *Fox V* did not read a nominal damages claim into their complaint [7] is inconsistent with the second sentence of Fed.R.Civ.P. 54(c), which states:

> Except as to a party against whom a judgment is entered by default, *every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled,* even if the party has not demanded such relief in the party's pleadings.

Fed.R.Civ.P. 54(c) (emphasis added). Plaintiffs are conveniently ignoring the plain language of that rule, however. On its face, that rule applies only where a final judgment is to be entered in the prevailing party's favor. *See Pearson v. Fair*, 935 F.2d 401, 414 (1st Cir.1991). This provision of Rule 54(c) empowers the court to award the prevailing party relief justified by the evidence adduced at trial, even if such relief was not specifically requested in that party's pleading. *See Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir.1971).[8] Obviously this lawsuit has not yet reached that point in the litigation and thus plaintiffs' reliance upon this particular provision of Rule 54(c) is wholly misplaced.

Moreover, even though one noted commentator has observed that, "Rule 54(c) has been utilized in a variety of contexts[,]"[9] the court is unaware of any case, and the parties have cited to none, wherein a court allowed Rule 54(c) to be used as a vehicle for reviving an otherwise moot action. Indeed if Rule 54(c) could be used for that purpose, a case would rarely if ever become moot. Clearly that was not the intended purpose of Rule 54(c). Thus, the court is not convinced that Rule 54(c) requires it to retreat from its earlier decision in *Fox V* that plaintiffs' complaint does not contain a claim for nominal damages which would defeat defendants' mootness argument. The court thus declines to expand the already broad scope of Rule 54(c) by employing it in a case where even a cursory reading of the Rule shows that it is impermissible to do so.

Plaintiffs' next argument is equally unavailing. Plaintiffs first state that nominal damages are available in a civil rights action such as the present one, even without a showing of actual injury. The court fully agrees. *See Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) (even in the absence of proof of actual injury, an award of nominal damages in the amount of $1.00 would be proper as a means of vindicating one's "absolute" right to procedural due process). Plaintiffs' analysis becomes flawed after that point, however, because of their undue emphasis on the phrase the "availability of nominal damages." *See* Plaintiffs' Opposition Memorandum at 20. Courts have not held, as plaintiffs seem to be suggesting, that the mere **availability** of nominal damages can save a case from becoming moot. Rather, without exception,

---

7. This court in *Fox V* pointed out that plaintiffs' complaint contained only the standard boilerplate "wherefore" clause, seeking "such other relief as the court deems just and proper[.]" *Fox V*, 764 F.Supp. at 756 (footnote omitted).

8. *See generally* 6 Moore's Federal Practice ¶ 54.62 (2nd ed. 1993); Federal Practice § 1255, at 371 and § 2664, at 146.

9. Federal Practice § 2644, at 156.

in the cases relied upon by plaintiffs, as well as in others,[10] the plaintiffs therein were able to avoid dismissal of their actions on mootness grounds because a damage claim was plainly alleged in the complaints.

For example, in *Davis v. Village Park II Realty Co.*, 578 F.2d 461 (2d Cir.1978), a case referred to by the plaintiffs herein, the Second Circuit expressly stated that, "[t]he availability of either nominal or substantial damages is sufficient to prevent this case from becoming moot." *Id.* at 463 (citing *Powell v. McCormack*, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 1950–52, 23 L.Ed.2d 491 (1969)). Unlike the plaintiffs in this case, however, from the outset the plaintiff in *Davis* had sought damages, costs and attorneys' fees, as well as injunctive and declaratory relief. *See id.* 578 F.2d at 462.

The same is also true of *Beyah v. Coughlin*, 789 F.2d 986 (2d Cir.1986), another case relied upon by the plaintiffs herein. In *Beyah* an Attica inmate brought an action for alleged constitutional deprivations which occurred while he was imprisoned there. During the course of that litigation, the plaintiff was released from prison. Therefore, on appeal, the defendants sought to sustain the judgment of the lower court dismissing the complaint on the basis of mootness. The Second Circuit gave short shrift to that argument. More specifically, the Court held that although the plaintiff's claim for declaratory and injunctive relief had become moot due to his release from prison, plaintiff's damage claim was not moot "since it is now well established that if he can prove that he was deprived of a constitutionally protected right, and if defendants are not able to establish a defense to that claim, Beyah [the plaintiff] will be entitled to recover at least nominal damages." *Id.* at 989 (citing *Carey, supra*).

There is again, however, a crucial distinction between *Beyah* and this case; and that is the fact that in *Beyah*, in his complaint, the plaintiff specifically sought compensatory and punitive damages, in addition to declaratory and injunctive relief. *Id.* at 987. Consequently, there was no need for the Court in either *Davis* or *Beyah* to consider whether a plaintiff can prevent a case from becoming moot based solely upon the availability of nominal damages, where no such damages were sought in the complaint (or, for that matter, where monetary damages were not mentioned at all in the complaint).

Indeed, in *Goichman v. City of Aspen*, 590 F.Supp. 1170 (D.Col.1984), *aff'd on other grounds*, 859 F.2d 1466 (10th Cir.1988), where the court did have occasion to address that issue, it refused to consider the constitutional issue raised by plaintiff simply to determine whether under *Carey, supra*, he was entitled to $1.00 in nominal damages. The court's refusal was based on the fact that the complaint did *not* include a prayer for nominal damages. *Id.* 590 F.Supp. at 1173. The Seventh Circuit reached the same conclusion in *R.S. & V. Co. v. Atlas Van Lines, Inc.*, 917 F.2d 348 (7th Cir.1990). In *Atlas Van Lines*, the Court held, in a breach of contract action, that the issue of whether the contract was terminable at will was moot because no nominal damages were claimed in the complaint. *Id.* at 348. Thus, in both *Goichman* and *Atlas Van Lines* the courts expressly declined to allow an unstated damage claim to prevent those cases from becoming moot.

■ Plaintiffs attempt to overcome this pleading deficiency by asserting that they are entitled to nominal damages, despite the fact that they did not seek the same in their

---

10. *See, e.g., Ellis v. Broth. of Ry., Airline and S.S. Clerks*, 466 U.S. 435, 442, 104 S.Ct. 1883, 1889, 80 L.Ed.2d 428 (1984) (claim for injunctive relief was rendered moot, but generalized claim in complaint for monetary damages kept the case alive, even though the amount at issue was "undeniably minute"); *McFarlin v. Newport Special School Dist.*, 980 F.2d 1208, 1211 (8th Cir.1992) (claim for injunctive relief mooted by plaintiff student's graduation, but damages also sought in complaint for deprivation of plaintiff's constitutional rights, thus "[t]he issue of damages contin-

ues to present a live controversy which may be litigated in the district court[ ]"); and *McCabe v. Nassau County Medical Center*, 453 F.2d 698, 701–702 (2d Cir.1971) (in action under 42 U.S.C. § 1983, damage claim not mooted even though plaintiff no longer needed equitable relief, because "[a] properly alleged damage claim was in the case from the start and was not inserted after *the complaint was filed in an attempt to breathe* life into a moribund dispute,.... [,]" and that claim was not nominal in that it was for $250,-000).

amended complaint.[11] Plaintiffs first attempt to cure their defective complaint by claiming that even though they did not mention nominal damages, there is an allegation in the complaint that "[t]he amount in controversy exceeds the sum of $10,000, exclusive of interest and costs."[12] Complaint at 5, ¶ 17. As defendants rightly note, however, plaintiffs are failing to take into account the distinction between a jurisdictional "amount in controversy" and an effort to recover certain kinds of monetary damages in a set amount. What is more important here, though, is the fact that jurisdiction is not predicated upon diversity. Thus that allegation is superfluous, and certainly would not serve to put defendants on notice as to the nature and scope of any potential damage claim against them.

■ Plaintiffs next rely upon their request in the "wherefore" clause for such "other relief as the Court deems just and proper." *Id.* at 16. Plaintiffs then argue again that nominal damages are "just and proper" in a civil rights action. As previously discussed, however, in contrast to the present action, in those cases where the possibility of recovering nominal damages did prevent a case from becoming moot, a damage claim was specifically alleged in the complaint.[13]

Plaintiffs also once again try to use Rule 54(c) as a means for reading a damage claim into their complaint where none exists. As the court has made clear, however, that is not a proper use of Rule 54(c).[14] The Fifth Circuit's decision in *Sapp v. Renfroe,* 511 F.2d 172 (5th Cir.1975), a case heavily relied upon by these plaintiffs, does not convince the court otherwise. At the time that action was commenced, the plaintiff was seeking enrollment in a high school which required all tenth grade male students to successfully

complete a course of military instruction, as a condition for completion of tenth grade and to graduate from that high school. The plaintiff refused to enroll in such a course and he was eventually denied admittance to that school. The plaintiff then brought an action alleging that the school board's refusal to allow him to attend that high school violated his right to free speech and freedom of religion. While the *Sapp* case was wending its way through the court system, the plaintiff graduated from another high school.

Following a non-jury trial, the district court rejected plaintiff's constitutional claim. On appeal the Fifth Circuit affirmed but for different reasons. The Court found plaintiff's claim for declaratory relief moot, but it did not find moot plaintiff's claim for monetary damages sustained as a result of tuition expenses incurred at the other high school. *Id.* at 176. The *Sapp* Court did not find that damage claim moot even though plaintiff's complaint did not include a claim for monetary damages, because the plaintiff there had incurred actual damages as a result of tuition expenses he incurred while attending the other high school. The Court noted in passing the applicability of Rule 54(c) to that situation. *Id.* at 176 n. 3.

Despite the remarkable similarity between the complaint in *Sapp* and the complaint at issue herein, particularly with respect to the nature of the relief sought therein,[15] the court does not read *Sapp* as sanctioning the use of Rule 54(c) in a case such as this where no trial has been conducted yet. In contrast to the present case, not only had a trial been conducted in *Sapp,* but evidence had also been proffered establishing that plaintiff had incurred actual compensatory damages. Therefore, the *Sapp* Court's reference to Rule 54(c) in that setting was entirely consis-

---

**11.** Significantly, plaintiffs did not assert a claim for monetary damages generally.

**12.** When this case was originally sued, the diversity statute required only $10,000 as the amount in controversy. 28 U.S.C. § 1332, Commentary on 1988 Revision (West Supp.1993). That changed in 1988 with the enactment of the Judicial Improvements and Access to Justice Act, which, among other things, raised the monetary

minimum under subdivisions (a) and (b) of this statute from $10,000 to $50,000.00. *Id.*

**13.** *See* discussion *infra,* p. 478–79.

**14.** *See* discussion *infra,* p. 478.

**15.** As in the present case, plaintiff Sapp's complaint did not contain a claim for monetary damages although it did demand such "further relief as is just and proper." 511 F.2d at 176 n. 3.

tent with the language and intent of that Rule. Assuming *arguendo* that plaintiffs' complaint had not been dismissed in *Sapp*, it would have been entirely proper for the district court, under Rule 54(c), to have fashioned a judgment awarding him monetary damages based upon the proof adduced at trial. Given the difference in procedural posture between *Sapp* and this case, this court still must conclude that the plaintiffs herein cannot salvage their otherwise moot case by resorting to Rule 54(c).

■ There is one final issue pertaining to nominal damages which cannot be overlooked and that is plaintiffs' alternative "request" for leave, yet again, to amend their complaint to specifically state a claim for nominal damages.[16] Plaintiffs' Opposition Memorandum at 23. In their reply, defendants assert, without any discussion, that the doctrine of qualified immunity precludes a recovery of nominal damages here.[17] In *Wilkinson v. Forst,* 832 F.2d 1330 (2d Cir.1987), *cert. denied,* 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 907 (1988) the Second Circuit, disagreeing with the district court, held that as to two of the defendants the law was not "so adequately clear and settled as to warrant an award of damages under the rule of *Harlow v. Fitzgerald.*" *Id.* 832 F.2d at 1342. Consequently, the Court reversed a judgment for nominal damages as against those defendants. *Id.* Consistent with that holding, more recently, in *Jermosen v. Smith,* 945 F.2d 547 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992), after undertaking a thorough discussion of qualified immunity, the Second Circuit concluded that "none of the defendants violated established rights of which a reasonable officer would have known." *Id.* 945 F.2d at 552. The Court therefore reversed the judgment of the district court and vacated the award of nominal damages and attorney's fees. *Id.*

■ Even though neither plaintiffs' request to amend their complaint nor defendants' qualified immunity defense are properly before the court, to be thorough, the court will at least comment upon these issues. Without engaging in an extensive discussion of qualified immunity, the court opines that, assuming *arguendo* that defendants had properly asserted a qualified immunity defense, in all likelihood, they would be entitled to such immunity insofar as a purported claim for nominal damages is concerned. The court bases that opinion on its observation that this protracted litigation has resulted in numerous written decision, including one by the Second Circuit [18] and one by the Supreme Court,[19] all focusing, for the most part, upon the extent and nature of plaintiffs' First Amendment rights, if any, and, as the parties are painfully aware, that issue is still unresolved. From the history of this litigation itself, it should be evident that plaintiffs did not have a "clearly established" right to conduct group demonstrations for housewares in their dormitory rooms at the time the events complained of occurred. *See Jermosen,* 945 F.2d at 550 (quoting *Natale v. Town of Ridgefield,* 927 F.2d 101, 104 (2d Cir.1991) (quoting in turn *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)) (" 'A government official performing a discretionary function is

16. The court is compelled to comment, as it has before, that the plaintiffs did not file a cross-notice of motion seeking this relief. Plaintiffs simply buried this request in their opposition memorandum of law. The court does not look favorably upon this practice. Without a notice of motion, both the court and opposing counsel are left to speculate as to the exact nature and scope of relief which a party is seeking. Moreover, without, in this case a notice of cross-motion, defendants were under no obligation to respond to such a request, and they did not. That defendants did not view this "request" as a motion is evident by the fact that they did not address the issue of whether plaintiffs should be allowed to amend their complaint to include a nominal damages claim in their Reply Letter Brief of July

11, 1991. (As the moving party, after first seeking permission from the court, which they did, defendants were entitled to file this reply in connection with their own motion. Northern District of New York Local Rule 10(E)).

17. Defendants' argument also suffers from a procedural irregularity: they failed to allege a qualified immunity defense in their answer.

18. *Fox v. Bd. of Trustees of State Univ. of New York,* 841 F.2d 1207 (2d Cir.1988).

19. *Bd. of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).

entitled to qualified immunity provided his or her 'conduct does not violate clearly established rights of which a reasonable person would have known.'"). Thus, without necessarily deciding the issue, it appears to the court that the constitutional rights asserted by plaintiffs were not clearly established at the time of the alleged violation. Consequently, assuming that defendants had properly raised a qualified immunity defense, in any event, plaintiffs would in all probability be precluded from recovering nominal damages from these defendants. Any request to amend the complaint to include such a claim would therefore be futile and so not proper. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend under Rule 15(a) should not be granted where amendment would be futile).

To summarize, plaintiffs have simply failed to convince the court that its finding in *Fox V* that a nominal damage claim could not be read into the complaint, so as to salvage plaintiffs' case from mootness, was in clear error. Consequently, the court adheres to its earlier decision in *Fox V* with respect to mootness and nominal damages.

## II. Leave to Amend the Complaint

The thrust of defendants' motion for reconsideration is that the court in *Fox V* improperly allowed plaintiffs to amend their complaint to substitute as plaintiffs students who were currently enrolled at SUNY. More specifically, the defendants contend that "[a] moot case cannot be revived by substituting new plaintiffs with a personal stake in the litigation." Defendants' Memorandum at 2.

In essence, plaintiffs respond that such an amendment is entirely proper under existing case law.[20]

■ There is a long unbroken line of cases holding that, generally, if a case has become moot while on appeal, the defendant is entitled to dismissal as a matter of right.[21] There can be no doubt as to the continuing vitality of that line of cases after the Second Circuit's decision in *New York City Employees Retirement System v. Dole Food Co.,* 969 F.2d 1430 (2d Cir.1992). In *Dole Food* the Second Circuit reiterated the general proposition requiring dismissal when a case becomes moot, explaining:

> A case becomes moot 'when the issues presented are no longer "live" or the parties "lack a legally cognizable interest in the outcome"' (quoting *Blackwelder v. Safnauer,* 866 F.2d 548, 551 (2d Cir.1989)); (citations omitted). When this occurs, the Constitution's case or controversy requirement, U.S. Const. Art. III, § 2, is not satisfied and a federal court lacks subject matter jurisdiction over the action. (citations omitted). *A moot action therefore must be dismissed,* even if the case was live at the outset but later events rendered it moot on appeal. (citation omitted). 'When a civil case becomes moot on appeal from a federal district court, the appropriate disposition is to dismiss the appeal, reverse or vacate the district court judgment, and remand the case to the district court with instructions to dismiss the complaint.' (quoting *Blackwelder,* 866 F.2d at 550) (citations omitted).

**20.** In their proposed amended complaint, plaintiffs added a number of new student plaintiffs to the original group of plaintiffs, as opposed to substituting, and that was in conformity with the court's directive in *Fox V. See* 764 F.Supp. at 759. However, given the fact that the court has already found that the original plaintiffs no longer have the requisite personal stake in this lawsuit, what the plaintiffs are in fact attempting to do, or should be attempting to do, is to substitute student plaintiffs who are currently residing in SUNY dormitories for those who no longer are. Indeed, it appears as though plaintiffs also view this as a substitution because many of their arguments are couched in terms of wholesale substitution and dropping parties, rather than focusing on the addition of plaintiffs.

**21.** *See, e.g., Great Western Sugar Co. v. Nelson,* 442 U.S. 92, 93–94, 99 S.Ct. 2149–50, 60 L.Ed.2d 735 (1979); *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950) (and cases cited therein at n. 2); *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936); *see also United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *Penguin Books USA, Inc. v. Walsh,* 929 F.2d 69, 72–73 (2d Cir.1991); *Hart v. Community School Bd. of Education,* 512 F.2d 37, 56 (2d Cir.1975) (citations omitted).

*Id.* 969 F.2d at 1433 (emphasis added). Similarly, in *In re Chateaugay Corporation,* 988 F.2d 322 (2d Cir.1993), the Second Circuit again stated that:

> The duty of an Article III court is to decide live controversies, 'not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' ... Accordingly, when, during the pendency of an appeal, events occur that would prevent the appellate court from fashioning effective relief, the appeal should be dismissed as moot....

*Id.* at 325 (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)) (other citations omitted).

Finally, very recently the Second Circuit again reaffirmed those principles in *Cook v. Colgate University,* 992 F.2d 17 (2d Cir. 1993). The Court in *Cook* vacated the judgment of the lower court and remanded with instructions to dismiss as moot because the plaintiff student athletes, who were challenging Colgate's failure to provide a comparable ice hockey program to men and women, will graduate before the commencement of the 1993–94 academic year, and the ice hockey season at Colgate has ended for this academic year. *Id.* at 20. In reaching that conclusion, the Court reasoned:

> None of the plaintiffs can benefit from an order requiring equal athletic opportunities for women ice hockey players. The only two plaintiffs with arguable standing are Thayer Jaques and Julie Wolff, both presently seniors at Colgate. However, the district court's order requiring Colgate to upgrade the status of its women's club ice hockey team does not take effect until the 1993–94 academic year. Because Jaques and Wolff will have graduated by then, nothing that we decide could affect their rights vis-a-vis Colgate.

*Id.* at 19 (citations omitted). Thus, despite the existence of significant issues pertaining to the status of women's collegiate sports, the

case is moot, and will shortly be dismissed, if it is not already been dismissed.

While the cases referenced above all became moot on appeal, as opposed to becoming moot on remand (which is the situation here), that distinction does not render them inapplicable. It is of little consequence at what point during the litigation an action becomes moot. What is important is that when an action becomes moot, it no longer presents a live case or controversy, and thus, in accordance with the law set forth above, a federal court must dismiss that case because it lacks subject matter jurisdiction to entertain it. And, try as they might, that is precisely the situation in which the plaintiffs herein find themselves. As in *Cook,* none of the original plaintiffs could possibly benefit from an order allowing them to conduct and/or attend group sales demonstrations in SUNY dormitories.[22]

Given the unequivocal language of *Dole Food,* as well as the case law just recited, this court is left with little, indeed no, leeway. The court has already expressly determined that this action is moot and that none of the exceptions to mootness apply to this case, *Fox V,* 764 F.Supp. at 752–757; and the court remains convinced of that. Thus, the defendants are right: the court must dismiss this lawsuit. While in the court's view, that result is regrettable given the fact that the important First Amendment issues raised by this action have been vigorously litigated by these parties for many years, and the parties, as well as the court, have received the benefit of the Supreme Court's instruction, nonetheless, the court is left with no other alternative. As the Supreme Court aptly stated in *Munsingwear, supra,* "[i]f there is hardship in this case, it was preventable." 340 U.S. at 39, 71 S.Ct. at 106. The same is true here. At the outset, the plaintiffs could have moved for class certification pursuant to Fed.R.Civ. 23; in that way, they could have avoided this now seemingly harsh but unavoidable result—dismissal

---

**22.** Incidentally, to put this controversy in some perspective in terms of a time frame, there is only one specific incident alleged in the complaint where a plaintiff was enrolled at SUNY at

the time he was denied permission to host such an event, and that was in November, 1982. Complaint at ¶ 37.

of a lawsuit which they have pursued for years.[23]

Plaintiffs ignore the well-established precedent requiring dismissal of a case which becomes moot during the course of the litigation, and instead assert that the court correctly allowed them to amend their complaint, even though this action had become moot. Plaintiffs rely upon two separate but somewhat related [24] Rules as sources for the court's authority to allow them to amend their complaint—Rule 15 and Rule 21. Regardless of which Rule the plaintiffs urge, however, amendment simply cannot be allowed under the circumstances of this case.

Although not relied upon by the court in *Fox V*, the plaintiffs submit that Rule 21 could provide a basis for allowing amendment of the complaint here. Rule 21 states in full:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party of its own initiative at any stage of the action and on such terms as are just.

Fed.R.Civ.P. 21. Several courts have recognized the impropriety of relying upon Rule 21 to substitute parties, as opposed to adding or dropping parties.[25] The Third Circuit's holding in *Field v. Volkswagenwerk AG*, 626 F.2d 293 (3rd Cir.1980), is illustrative in this regard. The *Field* Court refused to allow a non-diverse plaintiff to use Rule 21 as a vehicle for substituting a diverse plaintiff, reasoning:

this rule [21] authorizes a court to drop or add misjoined or nonjoined parties at any stage of any action on such terms as are just. But again, what the appellants endeavor to accomplish here is not to drop a misjoined party or to add a nonjoined party, but to substitute a diverse claimant for a non-diverse plaintiff. This kind of practice is simply not within the scope of Rule 21, which is not a rule providing for the substitution of parties ... Rule 21 was enacted to minimize the harsh effects of common-law adherence to technical rules of joinder.... It was not adopted, as Judge Lumbard has stated for the Court of Appeals for the Second Circuit, 'in order to deal with problems of defective federal jurisdiction.'

*Id.* at 306 (quoting *Kerr v. Compagnie De Ultramar*, 250 F.2d 860, 864 (2d Cir.1958)) (other citations omitted).[26]

██ By the same token, in this court's view, Rule 21 was also not enacted as a means for a party to avoid dismissal on mootness grounds. If that were so, no case would ever become moot because a party who no longer had the requisite personal stake in the litigation, so as to satisfy the case or controversy requirement of Article III, would only have to move under Rule 21 for substitution of a party who could satisfy that requirement. That was not the purpose underlying the adoption of Rule 21.[27]

██ Having said that, the court cannot ignore the fact that case support does exist, as plaintiffs noted, for permitting substitution of parties under Rule 21. Even a curso-

---

23. The court candidly admits that from the outset it has never understood the seeming reluctance by plaintiffs' counsel to seek class certification. A controversy such as this, involving as it does a group of students, begs for class certification. However, plaintiffs have amended their complaint a total of three times, excluding the amendment directed by the court in *Fox V*, yet not one of those times did they seek class certification.

24. *See generally* Federal Practice at § 1479, at 569–573 (discussing relationship between Rule 15(a) and other Federal Rules).

25. *See, e.g., Sable Communications of California v. Pacific Tel. & Tel. Co.*, 890 F.2d 184, 191 n. 13 (9th Cir.1989) ("Nothing on the face of Rule 21

allows substitution of parties. The rule by its terms creates means to cure '[m]isjoinder of parties.'")

26. *See also Schwartz v. Metropolitan Life Ins. Co.*, 2 F.R.D. 167, 168 (D.Mass.1941) (Rule 21 "contemplates the retention of a party or parties after the other party or parties are dropped or before they are added[;]" thus, the guardian suing as representative of insane ward was not allowed to institute a personal action against defendant by substitution.)

27. *See generally* Federal Practice § 1681, at 441 (footnote omitted) (Rule 21 "provides the courts with a valuable procedural device that can be used to avoid multiple litigation and to promote liberal joinder of parties.").

ry reading of those cases demonstrates, however, that they do not support allowing these plaintiffs to amend their complaint because the circumstances giving rise to substitution therein were markedly different from those extant here. For instance, in *Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952), the Supreme Court allowed the real party in interest to be substituted for his agent, acknowledging that "Rule 21 will rarely come into play at this stage of the litigation." *Id.* at 417, 72 S.Ct. at 430. The Court further acknowledged that it granted that motion because of the "special circumstances" presented therein. *Id.*

*Rogers v. Paul*, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965), a school desegregation case, is also readily distinguishable.[28] In *Rogers*, even though one of the student plaintiffs had graduated and the other had entered his final year of high school during the course of the litigation, the Supreme Court granted a motion to add two additional students as plaintiffs. The students who were added, however, were already members of the class represented. *Id.* at 199, 86 S.Ct. at 359. The distinction between *Rogers* and this case could not be more clear: no class was ever certified here. So, it is not a matter, as it was in *Rogers*, of merely adding members to an already certified class.

Finally, the court also does not find persuasive in this setting the Supreme Court's decision in *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), wherein the Court held that, *inter alia*, a Court of Appeals has authority under Rule 21 to dismiss a dispensable nondiverse party. *Id.* at 836, 109 S.Ct. at 2225. In *Newman–Green*, but for the presence of the dispensable, non-diverse party, there was a live case or controversy before the court. It was not a matter there of the Court reviving, based upon Rule 21, a no longer live controversy. Given the Supreme Court's own recognition that the issue presented in *Newman–Green* was a "narrow" one, *id.* at 832, 109 S.Ct. at 2223, coupled with the fact that that issue is entirely differ-

ent from the issue presented by the this motion, it is difficult to see the relevance of *Newman–Green* to this case.

A couple of other cases upon which plaintiffs rely are more closely analogous to the present case, and thus warrant closer consideration by the court. After carefully reading those cases several things become clear, however. The first is that the plaintiffs have selectively read those cases, citing to the court language which is admittedly favorable to their position on this motion, but failing to take into account the subtle but important differences between those cases and the present one. A second and equally important fact, which is apparent after scrutinizing those cases, is that the scope of permissible substitution thereunder is extremely limited; and that is something which plaintiffs also disregard. Consequently, even cases which at first glance tend to bolster plaintiffs' assertion that the court in *Fox V* properly allowed them to amend their complaint, still cannot aid plaintiffs in their struggle to overcome the fact that their case has become moot.

One of the cases which plaintiffs contend supports allowing them to amend their complaint is *Hackner v. Guaranty Trust Co.*, 117 F.2d 95 (2d Cir.), *cert. denied*, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941). The Second Circuit in *Hackner* allowed a new plaintiff, with a claim that would satisfy the jurisdictional amount, to be substituted by amendment, although none of the original plaintiffs had claims within the jurisdictional amount. The Court observed that by so doing, the delay and expense of a new lawsuit could be avoided. Closer examination of *Hackner* reveals, however, that there are critical distinctions between that case and the present one which renders it inapposite. The Fifth Circuit in *Summit Office Park v. United States Steel Corp.*, 639 F.2d 1278 (5th Cir.1981), accurately set forth the relevant and somewhat unique facts of *Hackner* as follows:

> [A]ll the named plaintiffs in *Hackner*, including the new plaintiff, had claims identi-

---

**28.** The Court in *Rogers* did not recite a particular rule or other statutory basis for its decision to allow the addition of plaintiffs there.

cal in substance.... The claims differed only in the jurisdictional amount sought for their individual injuries. Neither the *class* nor the cause of action was changed in the amended complaint. The original plaintiffs had valid claims, which, *as members of the class* they originally proposed, they could still recover upon in the new complaint. Therefore, in *Hackner,* both the original named plaintiffs and [the] *class* they represented continued to have a stake in the outcome of the same controversy.

*Id.* 639 F.2d at 1283 n. 12 (citation omitted) (emphasis added).

The differences between *Hackner* and this case are patently obvious. From the outset, *Hackner* was a class action, whereas the plaintiffs in this case have never sought class certification. Likewise, in this case, unlike *Hackner,* the original plaintiffs do not continue to have any personal stake in the outcome of this litigation. *See id.* Therefore, because of the numerous significant factual distinctions between *Hackner* and the present case, the court does not find that *Hackner* supports permitting these plaintiffs to amend their complaint to substitute students who supposedly are currently residing in SUNY dormitories, for those who no longer reside there.

*National Maritime Union of America v. Curran,* 87 F.Supp. 423 (S.D.N.Y.1949), also deserves close examination by the court. Based upon *Hackner,* in *National Maritime,* the court found that it did have the power to grant substitution of new plaintiffs to satisfy diversity requirements. *Id.* 87 F.Supp. at 426. After making such a finding, the court went on to discuss at length situations where substitution should be allowed other than under Rule 25—the rule applicable on its face to substitution.[29] The court in *National Maritime* enumerated three categories in which substitution may be allowed: (1) "where the same person is the party both before and after substitution, but desires to change the capacity in which he is bringing the action[;]" (2) where the United States government has taken over an action as the

real party in interest; and (3) where a mistake has been made as to the person entitled to bring the suit. *Id.* at 426. The court pointed out that in cases which fell into one of those three categories, there were "extenuating circumstances" justifying deviation from the general rules regarding substitution of parties. *Id.* The court refused to allow an amendment to substitute in *National Maritime,* though, because the facts of that case did not fall into any of those three categories. Likewise, because the facts of this case do not present extenuating circumstances even remotely analogous to those articulated in *National Maritime,* the court is not persuaded that *National Maritime* provides a basis for allowing these plaintiffs to amend their complaint.

■ In conclusion, although authority does exist for allowing substitution of parties under Rule 21, the court declines to do so under the circumstances presented herein. In the court's opinion, Rule 21 cannot be employed as a means to create a case or controversy through substitution where one no longer exists. If that were a proper application of Rule 21, then parties could routinely invoke Rule 21 as a means of circumventing a finding of mootness, thus rendering the mootness doctrine a legal fiction.

■ Next the court will explore whether, as plaintiffs urge, Rule 15(a) provides justification for allowing amendment of the complaint in this case. Rule 15(a) provides that "leave to amend shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Relying primarily upon the liberal spirit of that rule, the court allowed plaintiffs to amend their complaint to add new plaintiffs, even after a finding of mootness. In hindsight, the court was admittedly overzealous in its effort to assure that this case not be dismissed because of procedural deficiencies. Plaintiffs cite a host of cases which they claim support the conclusion that the court properly allowed amendment under Rule 15. *See, e.g.,* Plaintiffs' Opposition Memorandum at 2, n. 3, 4 and 5. Those cases are all factually distinguishable, however; and, of

**29.** Basically that rule designates four specific categories where substitution is appropriate: (1) death; (2) incompetency; (3) transfer of interest; and (4) public officers—death or separation from office. Fed.R.Civ.P. 25.

even more import is the fact that in not one of those cases were the plaintiffs allowed to amend their complaint after the court had determined that the action had become moot.

The court will not analyze each of the numerous cases cited by the plaintiffs, but even a quick perusal of just a few of them demonstrates that plaintiffs' reliance thereon is unfounded. The court readily concedes that it is perplexed by plaintiffs' reliance upon a couple of cases, which on their face are so strikingly dissimilar to the present one. First, noting that it was contrary to its usual practice to do so, the Supreme Court in *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972), did allow appellants on remand to amend their complaint even though the case had become moot on appeal. *Diffenderfer* had become moot, however, due to the fact that the statute which was being challenged by the plaintiffs was repealed, and during the course of the litigation, new legislation was enacted to take its place. Thus, *Diffenderfer* involved not a change in parties, which is what plaintiffs are seeking in this case, but rather it involved a change in the legislation being challenged by the same original plaintiffs.

*Bender v. Williamsport Area School District*, 741 F.2d 538 (3rd Cir.1984), *vacated on other grounds*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), is another case cited by plaintiffs which has absolutely no bearing on this action. There the Court specifically found that the issue presented was capable of repetition, yet evaded review, and thus an amendment was allowed. *Id.* 741 F.2d at 542 n. 4. This court in *Fox V* already considered and rejected that exception to the mootness doctrine. *Fox V*, 764 F.Supp. at 752–53.

Therefore, *Bender* is completely irrelevant and hence carries no weight with this court.

Not all of the cases cited by plaintiffs are so plainly inapplicable, however. One case reviewed by plaintiffs merits some discussion because it is factually similar to the present case, and that is *Graves v. Walton County Bd. of Education*, 686 F.2d 1135 (5th Cir. 1982), another desegregation case. The district court in *Graves* did allow the substitution of additional plaintiffs for the original named plaintiffs whose claims had become moot. *Id.* at 1136. The Fifth Circuit affirmed this aspect of the lower court's decision finding that the case was a class action, and had been "specifically described and treated as such by the parties and the trial court[,]" even though no formal certification order had been entered. *Id.* at 1138–40. And, therefore, in the Court's view, substitution of plaintiffs to keep the action alive was entirely proper. *Id.* at 1138. Once again, the distinction between *Graves* and this case is indisputable—*Graves* had been filed as a class action and treated as such by all concerned from the inception. That was not done here. Thus, as the foregoing makes clear, plaintiffs have been unable to provide the court with any relevant and persuasive case law which would support permitting an amendment here.

▇▇▇ Moreover, there is a procedural hurdle to allowing an amendment, which plaintiffs cannot surmount. In particular, by its terms Rule 15(a) allows only a "party" to amend "the party's pleading." Fed.R.Civ.P. 15(a). In the present case, however, the original plaintiffs are no longer "parties" to this action because the case has become moot as to them. Thus, by its terms, Rule 15(a) does not appear to support allowing the original plaintiffs to amend their complaint **after** a finding of mootness.[30]

---

**30.** Given the liberal manner in which the Second Circuit has allowed the amendment of complaints in arguably analogous circumstances, the court is compelled to offer a few observations at this point. The court is well aware that, at least in this Circuit, if a complaint is dismissed for failure to state a cause of action due to a jurisdictional defect, then that dismissal should be without prejudice to replead so as to cure the defect. *See Cushing v. Moore*, 970 F.2d 1103, 1110 (2d Cir.1992) (citing *Frasier v. General Electric Co.*, 930 F.2d 1004, 1008–09 (2d Cir.1991)). These

plaintiffs are not entitled to rely upon the liberal amendment principles espoused in *Cushing* and *Frasier*, however, because this case is now moot. There is a distinct difference, however between allowing a plaintiff to amend his or her complaint to cure a failure to properly allege jurisdiction and allowing a plaintiff who no longer has a personal stake in the outcome of the controversy to amend a complaint to revive an otherwise dead or moot action. In cases such as *Cushing* and *Frasier*, jurisdiction did exist, but it just was not properly pled, whereas when a case becomes

That conclusion is supported at least implicitly by *Summit Office Park*, a case mentioned earlier.[31] The court is compelled to address that case in some detail because it was the focus of much discussion by the parties to this lawsuit. In *Summit Office Park*, the plaintiff, an indirect purchaser of steel materials commenced an antitrust action, individually and on behalf of a putative class of indirect purchasers against the original seller. During the pendency of that action, the Supreme Court held in another case that only direct purchasers have a cause of action under the antitrust laws. Soon after that, the defendants moved for summary judgment. One day before the district court was to render its decision, plaintiffs "attempted to file an "amended complaint" on behalf of a restructured class limited only to direct purchasers." 639 F.2d at 1281. The proposed amended complaint also changed the cause of action in an effort to conform to the legal principles enunciated in the Supreme Court's intervening decision. As to that proposed amended complaint, in the words of the Fifth Circuit:

[t]he [district] court held that the Federal Rules of Civil Procedure do not contemplate the use of the amendment process in this manner. The court likened this attempt to amend the complaint to the procedural posture of a lawsuit in search of a sponsor. It noted that the cause of action and original named plaintiff had been dismissed, and that no named plaintiff or certified class member remained with any further stake in the outcome of the litigation. Continuing, the district judge stated, 'such a 'revolving door' theory of representation through the imaginative use of the

amendment process ... would vest in plaintiff's counsel a power and control over litigation, particularly class action litigation, heretofore not recognized by the federal courts.'

*Id.* The district court went on to "[o]bserve[ ] that no one with a valid claim remained to urge the amendment and that any litigation on behalf of direct purchasers should be filed in a new lawsuit." *Id.* (footnote omitted).

On appeal the individual plaintiff and the new proposed plaintiff asserted that they had a right to amend the complaint as a matter of course. They alternatively argued that the district court abused its discretion in denying leave to file the amended complaint. The Fifth Circuit rejected both of those arguments and affirmed holding "only that where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Id.* at 1282.

The plaintiffs herein strongly argue that *Summit Office Park* is inapposite because in their view the holding in that case was limited to the situation where the original plaintiff never had a cause of action. Plaintiffs assert, by contrast, that "the original student plaintiffs in this action did state a cause of action, and the new student plaintiffs will be merely continuing the same cause of action." Plaintiffs' Opposition Memorandum at 14. The court agrees with plaintiffs that the holding in *Summit Office Park* does seem to be confined to the "unique" facts therein.

moot, as it has here, by definition, the court lacks jurisdiction and hence it is without power to act. *See Pressroom Unions, Etc. Fund v. Continental Assur. Co.*, 700 F.2d 889, 893 (2d Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983) (footnote omitted) (upholding district court's denial of leave to amend, albeit under 28 U.S.C. § 1653 because the original plaintiff sought "not to remedy inadequate jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for one where it did not exist."); *see also Jaffree v. Wallace*, 837 F.2d 1461 (11th Cir.1988) (quoting *Summit Office Park, supra,* 639 F.2d at 1282) (plaintiffs could not amend their complaint to surmount an otherwise fatal *res judicata* bar because "'[n]o

amendment could give [plaintiffs] a cause of action.'"); *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774 (5th Cir.1986) (court refused to allow a nondiverse plaintiff to amend to substitute as a new plaintiff a diverse entity, because there was no longer a suit once the nondiverse plaintiff withdrew; and replacing the diverse entity necessarily created a new lawsuit). Thus, in the present case, even if the original plaintiffs could be considered parties for purposes of Rule 15(a), the court could not entertain their motion to amend because it would lack the power to do so.

**31.** *See supra,* p. 485.

*Id.* at 1282. In the court's opinion, however, the rationale of that case applies with equal force here. Under the case law previously outlined, once the court in *Fox V* found that the case had become moot, it should have dismissed the case outright. As in *Summit Office Park*, the original plaintiffs should not be allowed to circumvent the well settled principles requiring dismissal under these circumstances by creative use of Rule 15(a). This court, too, cannot countenance the "revolving door theory of representation" advanced by these plaintiffs.

A final consideration in deciding whether an amendment under Rule 15(a) should be granted is whether "justice so requires[,]" which is arguably just another way of viewing the prejudice factor. Fed.R.Civ.P. 15(a). For the same reasons so well put by the Court in *Summit Office Park*, justice would not be served if the plaintiffs in this action were allowed to amend their complaint at this point in the litigation. Justice does not require that the original plaintiffs be allowed to amend because their case is now moot and, as the defendants correctly noted, "their stake in the litigation is at most academic." Defendants' Memorandum at 6. Furthermore, justice does not require an amendment insofar as the proposed plaintiffs are concerned because they can file an entirely new action should they so choose. Lastly, justice does not require an amendment from the defendants' standpoint because:

> [e]ven if an amended complaint were permissible, it would substantially prejudice defendants by requiring an extensive new round of discovery. In the 4½ years [now almost 6½ years] since this case was tried, there has been a nearly-complete turnover in the administration of SUNY as a whole, and significant turnover as well in the administration of many SUNY campuses, including those at which the former and proposed plaintiffs were students. There is no indication of how these new administrators interpret the regulation at issue.

Smirlock Affidavit at ¶ 5. Thus, if the court were to allow amendment of plaintiffs' complaint herein, it would not be consistent with the mandate of Rule 15(a) that "leave shall be freely given when justice so requires."

Finally, the court cannot examine the effect of allowing an amendment under Rule 15(a) in a vacuum; it must consider the ramifications as they relate to Rule 23, which details the circumstances under which class certification is appropriate. Allowing the plaintiffs to amend their complaint at this late stage in the litigation would, among other things, substantially undermine Rule 23. That is, if courts were to routinely allow amendments in a situation such as this, the incentive for seeking class certification under Rule 23 would be greatly diminished; indeed the whole purpose for the class action mechanism would be undermined.

Having determined that the defendants are correct and that this action must be dismissed, there is no need to consider defendants' alternative argument that the court should certify an interlocutory appeal in this case. Nor is their any need for the court to address plaintiffs' motion for sanctions.

In conclusion, while the court is sympathetic to plaintiffs' plight, in that they and their counsel have undoubtedly invested a tremendous amount of time and resources in this litigation over the years, nevertheless, this case must be dismissed as moot. Therefore, the defendants' are entitled to the primary relief which they seek on this motion for reconsideration. In particular, the court hereby modifies its memorandum-decision and order of May 24, 1991, and hereby ORDERS that that portion of the May 24, 1991 order which permitted plaintiffs to amend their complaint pursuant to Rule 15(a) be deleted; and it is further ORDERED that the complaint be and is hereby dismissed. It is further ordered that plaintiffs' motion for sanctions (albeit in the form of a request, rather than by formal notice of motion) pursuant to Fed.R.Civ.P. 11 is DENIED.

IT IS SO ORDERED.